Cite as 2020 Ark. App. 178

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CV-19-259

|  |  |
|---|---|
| IN THE MATTER OF THE ADOPTION OF P.H., R.H., AND Z.H., THREE MINORS<br><br>AMBER HRDLICKA<br><br>APPELLANT<br><br>V.<br><br>MOLLIE HRDLICKA<br><br>APPELLEE | Opinion Delivered: March 18, 2020<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT<br>[NO. 26PR-17-549]<br><br>HONORABLE LYNN WILLIAMS, JUDGE<br><br>AFFIRMED |

**RITA W. GRUBER, Chief Judge**

Amber Hrdlicka appeals from the circuit court's order denying and dismissing her petition to adopt her three stepchildren without the consent of the children's mother, appellee Mollie Hrdlicka. Amber argues that the circuit court erred in finding that Mollie did not fail without justifiable cause to communicate with the children for a period of at least one year and thus that consent was required for the adoption; in denying her petition for adoption without hearing evidence regarding the best interest of the children; and in denying her motion for new trial. We affirm the circuit court's order dismissing the petition.

On January 12, 2016, appellee Mollie and appellant's spouse, Kurt Hrdlicka, divorced after a twelve-year marriage. They separated in April 2015 due at least in part to

Mollie's drug use. Kurt and Mollie have three minor children, temporary custody of whom was placed in Kurt in May 2015 pursuant to an agreed order. In the final divorce decree, Kurt was given custody of the children subject to supervised visitation with Mollie. The parties' agreed child-custody and property-settlement agreement, which was incorporated into the divorce decree, provided specifically:

> The supervised visitations will be administered by Joann Carter at Change Point located at 201 Nickels Street, Hot Springs, Arkansas 71901 for period of eight (8) visits. Upon satisfactory completion of the eight (8) visits, all drug screens being clean and upon approval by Joann Carter, wife shall be entitled to unsupervised visitations on alternating weekends upon providing proof that she has suitable housing for the parties' minor children. Wife shall be subject to random drug screens at the request of the husband or the Court. If husband requests wife to take a drug screen, he shall be responsible to pay the cost of the drug screen, but shall be reimbursed by wife in the event that she has a dirty drug screen.

The decree also provided that Mollie should pay no child support for five years in exchange for forfeiting her equity in the marital residence to allow Kurt and the children to remain there.

The parties agree that Mollie has not visited the children since the divorce decree was entered and that her last visitation occurred on May 30, 2015, at a Chick-Fil-A during their separation. According to Kurt, Mollie began cursing loudly in front of the children and caused an "embarrassing scene" after which she went to the marital home where Kurt lived with the children and "threatened to kill" Kurt with a drywall hatchet. The divorce court entered an order on June 25, 2015, suspending Mollie's visitation and prohibiting her from going to the parties' residence. In connection with these events, Mollie also spent approximately three months in the Garland County Detention Center during the summer

of 2015. She testified that she sent letters to the children from the detention center but that Kurt and Amber intercepted them, so she then sent letters for her children to her mother's house.

After the divorce decree was entered in January 2016, Mollie admitted that she continued to struggle with addiction until mid-2016. She was incarcerated from March through June 2016 in the Pike County Detention Center. She said that she mailed letters to the children while she was there. She testified that she requested visitation through Change Point "many, many times," including after she was released from jail in June 2016, but Kurt refused. Kurt testified that he refused to allow the children to visit because Mollie had not provided a clean drug screen, which he paid for and told Mollie when and where to go. However, he produced only one text from him to Mollie dated February 2016 stating, "Drug test 2:00 tomorrow hot springs paramedical 633 e grand." Joann Carter testified that Mollie requested visitation in 2016 and 2017, that she notified Kurt of the requests, that Kurt denied the requests without a clean drug screen, that Mollie asked Joann where to get tested, and that Kurt never told Joann where to send Mollie. Mollie claimed she asked but was not informed where to get tested.

On July 27, 2016, Mollie filed a motion for contempt against Kurt for refusing to allow her supervised visitation. Mollie was incarcerated in Arkansas Community Corrections (ACC) from August 9, 2016, through May 4, 2017. She testified that within two weeks of her release, she again requested visitation through Change Point, but Kurt

3

again refused. She filed a petition for contempt on September 5, 2017, to enforce her right to visitation.[1]

Amber testified that she and Kurt decided it was in the best interest of the children to stop Mollie's correspondence with the children. They were concerned about the content of the letters, including one stating that she was purchasing a house while in prison. Amber called ACC and explained there was a no-contact order prohibiting Mollie from sending letters to the children, which prevented any further written communication from Mollie.

On September 14, 2017, Amber filed a petition for adoption of Mollie and Kurt's three children, attaching Kurt's consent. Amber alleged that she was married to Kurt and that Mollie's consent was not required because Mollie "had failed significantly to support or communicate with the minor children for a period of more than one year without justifiable cause."[2] Mollie answered, denying the allegations and affirmatively pleading that two petitions for contempt had been filed in her divorce case due to Kurt's refusal to allow her visitation and stating that she was not required to pay child support for five years after the divorce in exchange for her relinquishment of her rights in the marital home.

---

[1]She filed a third petition for contempt in June 2018 when Kurt refused to attend court-ordered mediation on the matter.

[2]Consent to adoption is not required of "a parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree[.]" Ark. Code Ann. § 9-9-207(a)(2) (Repl. 2015).

The circuit court bifurcated the hearing, trying the issue of consent before trying the issue of best interest. On January 15, 2019, the court entered an order denying Amber's petition for adoption, finding that Mollie's consent was necessary because she had not failed significantly for a period of one year without justifiable cause to communicate with her children. The court noted the specific language regarding visitation in the parties' divorce decree, which did not require Mollie to pass a drug screen before each of the eight supervised visits. Specifically, the court found that Mollie began requesting visitation in May or June 2016 and filed a petition for contempt in July 2016 because Kurt refused to bring the children to Change Point for supervised visitation. The court found that Mollie never received any visitation before she began serving her nine-month sentence in ACC. The court found that upon her release, she again requested and was denied supervised visitation and filed another motion for contempt. The court noted that the case was ordered for mediation, which Kurt refused, prompting Mollie to file a third petition for contempt on June 19, 2018. The court found that Amber and Kurt "unjustifiably blocked communication and visitation between Mollie and the minor children."

Amber filed a motion for new trial, rearguing the evidence of Mollie's efforts to communicate and alleging that the circuit court's decision was contrary to the preponderance of the evidence. Amber asserted that she had not received a full and fair hearing because the circuit court precluded her from presenting evidence on the children's best interest to show that Mollie was unreasonably withholding her consent. The motion

was deemed denied when the circuit court failed to rule after thirty days. Amber filed this timely appeal.

Generally, consent to an adoption is required by the mother of the minor child to be adopted. Ark. Code Ann. § 9-9-206(a)(1) (Repl. 2015). However, Arkansas Code Annotated section 9-9-207 provides that consent to adoption is not required of "a parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree[.]" Ark. Code Ann. § 9-9-207(a)(2) (Repl. 2015). Adoption statutes are strictly construed, and a person who wishes to adopt a child must prove by clear and convincing evidence that consent is unnecessary. *In re Adoption of J.N.*, 2018 Ark. App. 467, at 7, 560 S.W.3d 806, 812. Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Human Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). We will not reverse a circuit court's finding that consent is unnecessary because of a failure to support or communicate with the child unless clearly erroneous. *In re Adoption of J.N.*, 2018 Ark. App. 467, at 7, 560 S.W.3d at 812. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In resolving the clearly erroneous question, the reviewing court defers to the circuit court because of its superior opportunity to observe the parties and to judge the credibility of witnesses. *Brumley v. Ark. Dep't of*

6

*Human Servs.*, 2015 Ark. 356. We view the issue of justifiable cause as factual but one that is determined largely on the basis of the credibility of the witnesses, and we give great weight to a circuit court's personal observations when the welfare of young children is involved. *Rodgers v. Rodgers*, 2017 Ark. 182, at 4, 519 S.W.3d 324, 327 (citing *In re Adoption of K.F.H. & K.F.H.*, 311 Ark. 416, 844 S.W.2d 343 (1993)).

For her first point on appeal, Amber argues that the circuit court erred in finding that Mollie's consent was required because it found justifiable cause for any failure by Mollie to communicate with the children. The parties do not dispute that Mollie had not seen the children from May 30, 2015, until Amber filed the petition for adoption in September 2017. The question is whether the court's finding that Kurt "unjustifiably blocked communication and visitation between Mollie and the minor children" and thus that Mollie had a justifiable cause is clearly erroneous.

"Without justifiable cause" means that the significant failure must be willful in the sense of being voluntary and intentional; it must appear that the parent acted arbitrarily and without just cause or adequate excuse. *In re Adoption of J.N.*, 2018 Ark. App. 467, at 8, 560 S.W.3d at 812. Here, Amber argues that the testimony was inconsistent regarding whether Mollie sent letters and how many and that Mollie failed to present any such letters or cards at trial. She also points to inconsistencies in the testimony about the number of times Mollie asked for visitation, arguing that her minimal efforts did not constitute the "ongoing efforts" necessary to require her consent. Amber also contends that Kurt paid for drug screens and notified Mollie of the times and locations for these screens but that

7

Mollie refused to comply in order to obtain her requested supervised visitation. She argues that Kurt required them for visitation because Mollie had failed drug tests in the past, the divorce decree permitted him to require her to take random drug screens, and Kurt did not want the children around Mollie unless she was drug-free. Amber argues that Mollie also never contacted Kurt directly to request visitation even though she had his phone number. Finally, Amber argues that whether the divorce decree required Mollie to submit to drug testing in order to have supervised visitation is irrelevant because three letters, three requests for visitation, and two unprosecuted petitions for contempt were minimal efforts and not of the type or frequency necessary to constitute communication with the children.

Amber's arguments require us to reassess the evidence and the witnesses' credibility, particularly Mollie's. We will not reweigh the evidence on appeal or second-guess the circuit court's credibility determinations. *See, e.g.*, *Westbrook v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 352, at 5, 584 S.W.3d 258, 262. The divorce decree does not require Mollie to pass a drug screen to obtain the eight supervised visitations through Change Point. Mollie testified that she requested visitations many times during 2016 and 2017 when she was not incarcerated. Joann Carter's testimony supported this. Kurt specifically stated that he refused her requests because she did not obtain a drug test at the times and places he set up; however, it was not clear from the testimony whether Mollie was notified of these times and places. Mollie filed three petitions for contempt to enforce her right to visitation. Mollie also testified that she wrote letters to the children while she was in Garland County detention, Pike County detention, and ACC. Amber stopped the

correspondence by informing ACC that Mollie was not allowed to send the children letters. The court's findings regarding consent were not clearly erroneous.

For her second point on appeal, Amber contends that the circuit court erred in denying her petition for adoption before hearing testimony regarding the best interest of the children and concerning whether Mollie was unjustifiably withholding her consent contrary to the best interest of the children. She claims this constituted a "de facto grant of summary judgment and a violation of her due process rights." She argues that despite her objections, the circuit court bifurcated the case into two separate hearings: one regarding whether Mollie's consent was required under Ark. Code Ann. § 9-9-207 and one regarding the best interest of the children. Because the court determined that Mollie's consent was required and it had not been obtained, the court denied the adoption petition without a hearing on best-interest grounds.[3] She alleges that this was error.

First, Amber did not "object" to the bifurcated hearing. At the conclusion of the first day of the adoption hearing, the following colloquy occurred:

| COURT: | … do y'all want to try the consent interest by itself and come back at a later date for the best interest of the child? |
|---|---|
| MOLLIE'S COUNSEL: | I would. |

---

[3]Before an adoption petition may be granted, the circuit court must find by clear and convincing evidence that the adoption is in the best interest of the child. *Hollis v. Hollis*, 2015 Ark. App. 441, at 7, 468 S.W.3d 316, 320; *see also* Ark. Code Ann. § 9-9-214(c) (providing the court may issue a final decree of adoption if at the conclusion of the hearing the court determines the required consents have been obtained or excused and adoption is in the best interest of the individual to be adopted).

AMBER'S COUNSEL:  I'd prefer to try it all at the same time, but —

THE COURT:  It's y'all's money we're about to spend because you're asking Brenda Simpson —I mean I have no idea how I'm going to rule. It's a blank, total blank slate, but I just thinking —

MOLLIE'S COUNSEL:  I'd prefer to split it, Your Honor.

AMBER'S COUNSEL:  We'll do two separate hearings, Your Honor.

Moreover, once the circuit court found that Mollie's consent was necessary in this case, a finding on best interest was not necessary because Mollie had not consented.

Second, Amber did not preserve the issue regarding whether Mollie was unjustifiably withholding her consent. Arkansas Code Annotated section 9-9-220 provides a mechanism in an adoption case for a parent to voluntarily relinquish his or her parental rights or for the court to order termination on legal grounds including abandonment, neglect or abuse, and "in the case of a parent not having custody of a child, his or her consent is being unreasonably withheld contrary to the best interest of the child." Ark. Code Ann. § 9-9-220(c) (Repl. 2015). Although a petitioner for adoption may pursue termination against a parent in connection with an adoption proceeding, the statute requires a petition for termination to be filed and served. Ark. Code Ann. § 9-9-220(f) (Repl. 2015). Amber's petition for adoption alleged only that Mollie's consent was not required because she had failed to support or communicate with the minor children for a period of more than one year without justifiable cause. Amber did not request termination of Mollie's parental rights pursuant to section 9-9-220 or allege that Mollie's consent was

being unreasonably withheld. She did not raise this argument until her motion for new trial, which is too late to preserve the issue for our review. *See, e.g., Jones v. Double "D" Props., Inc.*, 352 Ark. 39, 48–49, 98 S.W.3d 405, 410–11 (2003). Thus, we will not address it on appeal.

Finally, Mollie argues that the circuit court abused its discretion in denying her motion for new trial.[4] She argues first that the circuit court abused its discretion for failing to allow her to put on evidence that Mollie's consent was being unreasonably withheld contrary to the children's best interest. She also argues that she did not receive a fair hearing because the court appeared to be biased against her attorney. The abstract is devoid of any objection or motion to recuse due to this alleged bias, and Amber failed to raise this issue in her motion for new trial; thus, we will not consider it here. *Dodson*, 345 Ark. at 440, 47 S.W.3d at 872. Turning to the argument that Amber was denied a full and fair hearing on the issue of Mollie's consent having been unreasonably withheld, we reject this argument for the reasons stated above.

She also argues that the court abused its discretion for failing to grant her a new trial because the court's decision regarding consent was contrary to the preponderance of the evidence. Again, as we discussed above, the court's decision that Mollie did not fail without justifiable cause to communicate with the children for a period of at least one year

---

[4]We will reverse a circuit court's grant or denial of a motion for new trial only if there is a manifest abuse of discretion. *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 440, 47 S.W.3d 866, 872 (2001).

is not clearly erroneous; thus, its decision to deny Amber's motion for new trial is not an abuse of discretion.

Affirmed.

HARRISON and WHITEAKER, JJ., agree.

*Tripcony May*, by: *Heather M. May*, for appellant.

*Brian L. Johnson*, for appellee.