SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-14-1006

|  |  |
|---|---|
| | **Opinion Delivered** September 2, 2015 |
| JUSTIN WAYNE HOLLIS and KAHLA ALISE HOLLIS<br><br>APPELLANTS | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [No. 26PR-13-303] |
| V. | HONORABLE JOHN HOMER WRIGHT, JUDGE |
| MELINDA NICOLE HOLLIS<br><br>APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

Appellants Justin and Kahla Hollis appeal the order of the Garland County Circuit Court, denying their petition to adopt Kahla's stepson, E.H. On appeal, Justin and Kahla argue that (1) the trial court erred as a matter of law in denying the petition for adoption because it failed to employ the required two-part adoption analysis; (2) the trial court's order was clearly erroneous because they proved that consent to the adoption by E.H.'s mother, appellee Melinda "Nicole" Hollis, was not required; and (3) the trial court clearly erred in finding that adoption was not in the best interest of E.H. We affirm.

Justin and Nicole were married on December 2, 2002, and had one child, E.H., born January 23, 2004. The parties were divorced on December 17, 2009. The divorce decree granted Justin custody of E.H. and Nicole supervised visitation. Justin married Kahla on July 31, 2010. They, their eighteen-month-old son, R.H., and E.H. have lived together in Hot Springs, Arkansas, since July 2012. Prior to that time, they lived in Fort Polk, Louisiana.

On June 3, 2011, an order was entered by the trial court granting Nicole's motion for unsupervised visitation. Certain conditions were included in the order, dictating with whom Nicole and E.H. could have contact and prohibiting Nicole from using illicit drugs or abusing prescription drugs. This order further ordered Nicole to pay $82 per week in child support.

On May 24, 2013, Justin and Kahla filed a petition to adopt E.H. They alleged, among other things, that Nicole owed child support and had not exercised visitation with E.H. since October 2011. Based on these allegations, Justin and Kahla claimed that Nicole's consent to adoption was not required under Arkansas Code Annotated section 9-9-207(a)(2).

A hearing on the petition for adoption was held on June 20, 2014. Kahla, who was twenty-six years old, testified that she worked in a hospital emergency room as a student nurse and was in nursing school with an expected graduation date of May 2015. Kahla stated that she and Justin had full custody of E.H. for four years and that she had raised, disciplined, and loved him.

Kahla testified that Nicole had not visited E.H. regularly. For example, Kahla stated that Nicole did not visit E.H. for one year after the divorce. After the June 2011 order granting Nicole unsupervised visitation, the first three visits took place as scheduled; however, the visits thereafter became more inconsistent. Sometimes Nicole picked up E.H., and other times her parents did.[1] According to Kahla, there were two occasions when she and Justin drove E.H. to Shreveport for an exchange, and no one was there. Kahla testified that Nicole's last visit with

[1]During this time, Nicole lived in El Dorado, Arkansas, and Justin and Kahla lived in Fort Polk, Louisiana. The custody exchange took place at a midway point in Shreveport, Louisiana.

E.H. was on October 22, 2011. Kahla said that since October 2011, Nicole had made only one child-support payment and that she owed back child support in the amount of $11,764. Kahla denied preventing or frustrating visitation between E.H. and Nicole or her parents.

While E.H. did not see his mother after October 2011, Kahla testified that he did see his maternal grandparents six or seven times. And after Nicole's father passed away, Kahla said that E.H. continued to visit with Nicole's mother. Kahla confirmed that the last communication she had with Nicole was November 25, 2011. According to Kahla, E.H. has been in counseling since 2010. During one counseling session in 2011, E.H. reported an incident that the counselor reported as child abuse.[2] Kahla testified that in the spring of 2014, Nicole sent an Easter basket, which included a money order to E.H., and she visited E.H. at his school.

Justin testified that Kahla and E.H. have a good relationship; that E.H. sees Kahla as his mother; that he calls her "mother"; and that she is one of the best mothers he (Justin) knows. Justin stated that after his divorce from Nicole, her visitation was restricted because of her lifestyle, which included drinking and drug abuse. He testified that in May 2011, Nicole was granted unsupervised visitation, which, according to him was sporadic after the third visit. He stated that he and Kahla did everything they could to facilitate visitation.

E.H., a fourth grader at the time, testified that Kahla was his mom but that "Nikki" was his real mom. He said that recently he received an Easter basket from Nikki and that she visited him at school. He said that Nikki stayed during lunch and recess and took pictures. He added

---

[2]The petition details the alleged abuse, stating that in November 2011, E.H. told his counselor, Justin, and Kahla that during his last visit with Nicole, he had to sleep on the floor beside her bed; he watched Nicole and her boyfriend have sex; he was stepped on and choked by the boyfriend; and he witnessed the boyfriend physically abuse Nicole.

that he had a "little bit of fun" with her. E.H. testified that, before the school visit, the last time he had seen Nikki was two years ago. E.H. said that he calls Nikki's mother "Nana." According to E.H., Nana is great and made him happy. She visited him every Christmas and sent him presents for his birthday and Christmas. He said that he hugged and kissed her.

E.H. testified that he wanted to be adopted by Kahla and that he had a good relationship with her. He said that she took care of him and helped him with his problems. He added that he did not want to be with Nikki because "bad things" happened to him when he was with her. He said that a man punched him in the stomach. While he said that he did not tell Nikki that he had been hit, he added that she would not take him home when he told her he was not feeling well and wanted to leave. He also talked about a boyfriend of Nikki's who made him eat food off the floor and choked him. He said Nikki only saw him being choked, after which she left with E.H. He also said he saw Nikki and the boyfriend having sex and that he did not feel safe with Nikki.

Nicole testified that the last time she saw E.H. was when she visited him at his school. She said that E.H. was very shocked but happy to see her. He introduced her to his friends, they collected rocks, played with his friends, and she took some photographs. She said that the last time she had seen him prior to the visit at his school was in October 2011. Nicole testified that she was told by her mother that she (Nicole) would not be permitted by Justin and Kahla to visit E.H. Nicole said that she and Justin were not on speaking terms and that she spoke more often with Kahla. However, after speaking with Kahla, she (Nicole) felt belittled because Kahla would bring up Nicole's past, which Nicole admitted included drugs and alcohol (including a DWI) and

SLIP OPINION

relationship problems. Nicole testified that she did not hire an attorney to petition for visitation with E.H. because she lacked funds. She did, however, testify that she tried to send five child-support money orders to E.H. in 2014, although not all of the money orders were dated and four of them were sent to the wrong address. She testified that she stopped sending child support because Justin and Kahla would not let her see E.H. She conceded that the last child-support payment she made before the 2014 payments was over two years ago.

When asked about E.H.'s testimony that he was choked by Nicole's boyfriend, she denied witnessing the event. She further testified that, to her knowledge, none of her boyfriends had abused E.H. and that she did not have sex in his presence intentionally.

Nicole stated that she was working two jobs—at a department store and as a server at a restaurant. She said that she was also in college, made straight As her first semester, and planned to attend nursing school. She was sharing an apartment with a friend in order to split her living expenses. Nicole stated that she did not want the adoption to be approved, that she loved E.H., and that she wanted to reestablish a relationship with him. She added that she no longer had substance-abuse or relationship problems.

Nicole's mother, Debbie Allen, was the final witness at the hearing. She testified that the last time she saw E.H. was December 28, 2013. She said that she saw him at Kahla's parents' home in El Dorado, where she brought Christmas gifts for E.H. She said that she did not make efforts to see E.H. after that time because she believed that Justin and Kahla would not permit it. Debbie said that Nicole had changed her life—she was not addicted to drugs, she was going



to school, and she was staying out of trouble. Debbie believed that Nicole wanted to spend time with E.H. and had the right to do so.

Thereafter, the trial court entered a letter opinion denying Justin and Kahla's petition for adoption. The trial court's order provided:

> The Petition for Adoption is denied. I find that [Justin and Kahla] have failed to establish by clear and convincing evidence that the adoption is in the best interest of the child. I appreciate the effort that [Kahla] has made to establish a strong and loving relationship with [E.H.] and I hope that this decision will not interfere with that relationship continuing to flourish, but I do not think the evidence supports the termination of the parent-child relationship. I do find that the failure of [Nicole] to provide care and support for the child has stemmed, at least in part, from financial considerations and I am very hesitant to terminate when that is a significant factor. I also find that she is curing those problems . . . .

On August 4, 2014, the trial court entered an order consistent with the letter opinion. This appeal followed.

In adoption proceedings, we review the record de novo, but we will not reverse the lower court's decision unless it is clearly erroneous or against a preponderance of the evidence, after giving due regard to its superior opportunity to determine the credibility of the witnesses. *Ducharme v. Gregory*, 2014 Ark. App. 268, at 6, 435 S.W.3d 14, 18. We have said that in cases involving minor children a heavier burden is cast upon the court to utilize to the fullest extent all its power of perception in evaluating the witnesses, their testimony, and the children's best interest; that the appellate court has no such opportunity; and that we know of no case in which the superior position, ability, and opportunity of the trial court to observe the parties carry as great a weight as one involving minor children. *Id.*, 435 S.W.3d at 18. When the issue is one of terminating parental rights, the appellate courts have referred to the "heavy burden" upon the

 

party seeking to terminate the relationship. *Id.*, 435 S.W.3d at 18. Adoption proceedings are in derogation of the natural rights of parents, and statutes permitting such are to be construed in a light favoring continuation of the rights of natural parents. *Id.*, 435 S.W.3d at 18.

Generally, consent to an adoption is required by the mother of the minor child to be adopted. Ark. Code Ann. § 9-9-206(a)(1) (Supp. 2013). Under certain circumstances, however, the consent of the mother may not be required. Arkansas Code Annotated section 9-9-207(a)(2)(i) & (ii) (Repl. 2009) provides that consent to adoption is not required of a parent of a child in the custody of another, if the parent for a period of at least one year has failed significantly without justifiable cause to communicate with the child or to provide for the care and support of the child as required by law or judicial decree. Additionally, before an adoption petition can be granted, the trial court must find from clear and convincing evidence that the adoption is in the best interest of the child. *In re Adoption of M.K.C.*, 2009 Ark. 114, at 2, 313 S.W.3d 513, 514 (citing *In re Adoption of A.M.C.*, 368 Ark. 369, 246 S.W.3d 426 (2007); *Dixon v. Dixon*, 286 Ark. 128, 689 S.W.2d 556 (1985)). *See also* Ark. Code Ann. § 9-9-214(c) (Repl. 2009) (providing that the trial court can issue a final decree of adoption if at the conclusion of the hearing the court determines that the required consents have been obtained or excused *and* that the adoption is in the best interest of the individual to be adopted). The mere fact that a parent has forfeited her right to have her consent to an adoption required does not mean that the adoption must be granted—the court must further find from clear and convincing evidence that the adoption is in the best interest of the child. *Waldrip v. Davis*, 40 Ark. App. 25, 26, 842 S.W.2d 49, 50 (1992).



Justin and Kahla's first argument on appeal is that the trial court erred as a matter of law in denying the petition for adoption because the court failed to employ the required two-part adoption analysis—determining whether required consent must be obtained or excused and whether the adoption is in the best interest of the child. They contend that the trial court's error includes reaching a best-interest conclusion without providing an analysis and failing to make any findings on the issue of whether Nicole's consent to adoption was required. We disagree.

If a trial court finds that an adoption is not in the best interest of a child, it is of no significance whether consent to adoption is required. In other words, if a trial court determines that consent to an adoption is not required, pursuant to section 9-9-207(a)(2), there can be no adoption if the trial court also finds that adoption is not in the best interest of the child. Therefore, we hold that the trial court did not err as a matter of law in not addressing both parts of the two-part adoption analysis.

For their second point on appeal, Justin and Kahla argue that the trial court's order is clearly erroneous because they proved that Nicole's consent to the adoption was not required. They contend that the facts were undisputed that, for at least one year without justifiable cause, she did not maintain significant contact with E.H. and that she did not provide for his care and support. However, we need not reach the merits of this argument because the trial court did not



make any findings on this issue[3] and such findings were not necessary based on the trial court's conclusion that Kahla's adoption of E.H. was not in his best interest.

That brings us to Justin and Kahla's third point on appeal—the trial court clearly erred in finding that adoption was not in the best interest of E.H. They cite undisputed evidence that Nicole did not visit, contact, or support E.H. for two years. They also cite evidence that her boyfriend(s) physically abused E.H., that she had a drug problem, and that she was convicted for DWI. They point out that Kahla has served as E.H.'s mother for the past four years, that she and E.H. have a loving relationship, and that E.H. wanted Kahla to adopt him. Finally, they point to E.H.'s testimony that he did not want to be with Nicole and that he was afraid when he was with her.

There is no question that Kahla has been a dutiful stepparent/mother to E.H. and that she should be commended for fostering a loving relationship with E.H. However, under our standard of review, we hold that the trial court's finding that adoption is not in E.H.'s best interest is not clearly erroneous. While the trial court's specific findings on this issue are sparse, the court did find that Nicole's failure to provide care and support for E.H. was due, in part, to her financial problems, which the court found she was curing. The evidence supports this finding. Nicole was working two jobs, had completed a semester in college—earning all As, and

---

[3]There is nothing in the record to show that Justin and Kahla requested specific findings of fact and conclusions of law on the issue of consent either prior to or after entry of the order. Rule 52(a) of the Arkansas Rules of Civil Procedure provides, in relevant part, that if requested by a party, in all contested actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon. Ark. R. Civ. P. 52(a) (2015). Because Justin and Kahla made no request for findings, they waived their right under Rule 52. *See Smith v. Quality Ford, Inc.*, 324 Ark. 272, 276, 920 S.W.2d 497, 499–500 (1996).



planned to attend nursing school. There was also evidence that in 2014 she attempted to send five money orders, with one of the money orders actually reaching E.H. She testified that she had an apartment with a roommate to split living expenses.

In our de novo review, we also hold that other evidence supports the trial court's best-interest decision. There is evidence that, when Nicole visited E.H. at school, he was happy about it. All of the pictures introduced into evidence show both he and Nicole smiling. Nicole said that he introduced her to his friends, and E.H. testified that he had a "little bit of fun" with her. Furthermore, it is clear that E.H. had a loving relationship with Nicole's parents, visiting with them fairly regularly and continuing to visit Nicole's mother after Nicole's father's death. E.H. said that Nicole's mother, "Nana," was great and that she made him happy. Finally, there was evidence that tension existed between Justin/Kahla and Nicole/Debbie, which could have also troubled the trial court and served as a basis for finding that the adoption was not in E.H.'s best interest. *See In re Adoption of J.P.*, 2011 Ark. 535, at 19, 385 S.W.3d 266, 278 (affirming trial court's denial of a stepmother's petition to adopt her husband's child where there was evidence of tension between her and the maternal family).

This evidence demonstrates that Nicole had made significant strides to improve her lifestyle and relationships, including her relationship with E.H. This evidence also demonstrates that E.H. had a positive relationship with his maternal grandmother and that it would not be in his best interest to terminate that relationship. We must give due regard to the trial court's personal observations and assessment of the credibility of the witnesses. Therefore, we hold that the trial court's decision that Justin and Kahla failed to meet their burden by clear and



convincing evidence that adoption was in E.H.'s best interest was not clearly erroneous.

Affirmed.

WHITEAKER and HIXSON, JJ., agree.

*E. J. Reynolds Law Firm, P.A.*, by: *Emily J. Reynolds*, for appellant.

*Depper Law Firm*, by: *Robert L. Depper, Jr.*, for appellee.