MIKE MURPHY, Judge
Appellant Austin Ballard filed a petition to adopt his wife's, Hailee Ballard's, five-year-old son, BLH. The child's biological father, Curtis Howard, contested the adoption. After a hearing, the lower court denied the petition. It found that Howard had failed to support his child for a twelve-month period despite having some income but nevertheless denied the adoption petition, finding that to do so would not be in the child's best interest. On appeal, the Ballards argue that the court erred in finding that the adoption was not in BLH's best interest. We affirm.
I. Facts
The court heard the following testimony. Curtis Howard testified that he was sixteen when BLH was born out of wedlock, and that he was currently in jail for robbery and aggravated assault. He anticipated his release in 2021. Curtis testified that he loves his son and wants to be a part of BLH's life when he gets out of jail.
Hailee Ballard testified next. She testified that she was seventeen when BLH was born. Shortly after BLH was born, Hailee and Curtis lived first with her mother, then with Curtis's mother (Donna Posey), and then back with her mother before they quit dating and Hailee got her own place.
According to Hailee, Curtis was "a deadbeat" who didn't have a job, drew Social Security, and used drugs. She said that during the first year of BLH's life, her mother and Curtis's mother helped support them. She testified that after she and Curtis broke up, he did not contribute to raising BLH. She testified that her husband, Austin, loves BLH and has raised him as his own. In response to the court's questioning, Hailee further discussed that BLH had seen Curtis's mother frequently, "as well as that side of the family," and that Donna has a good relationship with BLH. She testified that BLH sees Curtis's family and has a good relationship with the Howard family, and if that relationship were to stop, it would be detrimental to the child. She said she doesn't have any obligation to let Curtis's family see the child but that she does "out of the benefit of my child having all the family he can to love him." She said that severing ties between BLH and the Howard side of the family "would just crush him."
*802 The court heard testimony from Austin Ballard. Austin said that he has been a part of BLH's life since BLH was born. He testified that Curtis used to do a lot of drugs and never helped Hailee with BLH. Austin talked about how, when BLH was a baby, he would get up with him in the middle of the night to feed him and change his diapers. He taught BLH to ride a bike. He is very willing to establish a parent-child relationship with BLH.
Hailee's maternal grandmother, Shirley Willard, testified that Hailee and Austin live with her. Shirley described Hailee and Austin as very good parents. She stated that Austin treats BLH as if he is his own son and that they have a father-son bond. Shirley stated that Hailee and Donna are friends and that there was no indication that Hailee would not allow Donna continued visitation with BLH if the adoption were granted.
Donna Posey, Curtis's mother, testified that she and BLH have a special relationship and that Hailee and Curtis lived with her for about six months after BLH was born. When BLH was two, Donna kept him every other weekend. She loves BLH and he is closely bonded with her and other members of her side of the family.
The court ruled from the bench at the conclusion of the hearing:
In order for an adoption to be granted, you need a consent of the biological parent, or ties having been severed, or a waiver of consent. And it would be the finding in the child's best interest for the adoption to proceed.
In this case, I think it is fairly clear that Mr. Howard has failed to support the child for 12-consecutive-months during his lifetime, so consent is not required. The bigger issue is what is in the best interest of this child? The fact that each party was extremely young when this child was born, Mr. Howard is only 21, now, and that has to play a role in this decision. As to what is going to happen in the future, I don't know, nobody here knows what is going to happen.
There was significant testimony about the significant relationship that the minor child has with the Howard family. It was admitted even by the mother that there was a significant relationship there. I don't think it would be in the best interest of this child to sever that relationship with an adoption.
There are a lot of issues in this case. I have no doubt that where the child is right now is the best place for him to be. He's got a loving mother, and what he knows to be his father there. I think that is very important that it stay in place.
The concerns they have about Mr. Howard can be addressed with a lot less drastic remedy than an adoption. Again, because of this significant relationship that this child has with the Howard family, I find that it is not in the best interest to grant the adoption today. So that petition will be denied.
The Ballards now bring this timely appeal, arguing that the court erred in finding the adoption would not be in BLH's best interest.
II. Standard of Review
We review the record of an adoption proceeding de novo. Ducharme v. Gregory , 2014 Ark. App. 268, at 6, 435 S.W.3d 14, 18. Generally, consent to an adoption is required by the father of the minor child to be adopted. Ark. Code Ann. § 9-9-206(a)(2) (Repl. 2015). Under certain circumstances, however, the consent of the father may not be required. Arkansas Code Annotated section 9-9-207(a)(2)(i) & (ii) provides that consent to adoption is not required of a parent of a child in the *803 custody of another, if the parent, for a period of at least one year, has failed significantly without justifiable cause to communicate with the child or to provide for the care and support of the child as required by law or judicial decree. However, the mere fact that a parent has forfeited the right to have his consent to an adoption required does not mean that the adoption must be granted-the court must further find from clear and convincing evidence that the adoption is in the best interest of the child. Waldrip v. Davis , 40 Ark. App. 25, 26, 842 S.W.2d 49, 50 (1992).
Here, the finding regarding consent is not disputed. The trial court found that Curtis's consent to the adoption was not required because he had failed to provide support for BLH for a period of one year. Nonetheless, it found that the adoption was not in BLH's best interest. Concerning best interest, specifically, we will not reverse a trial court's decision unless it is clearly erroneous or against the preponderance of the evidence. Hollis v. Hollis , 2015 Ark. App. 441, 468 S.W.3d 316. We have said that in cases involving minor children, a heavier burden is cast upon the trial court to utilize to the fullest extent all its power of perception in evaluating the witnesses, their testimony, and the child's best interest; that the appellate court has no such opportunity; and that we know of no case in which the superior position, ability, and opportunity of the trial court to observe the parties carry as great a weight as one involving minor children. Ducharme , supra .
III. Discussion
The appellants begin their argument by discussing grandparent-visitation law. They argue that because the grandmother has no statutory grandparent-visitation order, she does not have any enforceable right to a relationship with BLH. Quoting Quarles v. French , 272 Ark. 51, 54, 611 S.W.2d 757, 759 (1981), they argue that Donna "had no right" to "offer 'such evidence as may be relevant to the focal issue, i.e., whether the proposed adoption is in the best interest of the children.' "
The Ballards conflate, however, a right that a grandparent may or may not have with what is in the child's best interest. The issue here is not whether Donna may intervene (as was the issue in Quarles and its progeny) but whether declining to sever the relationship BLH has with his paternal family is in BLH's best interest. Quarles is simply not applicable. Nor did the appellants object to Donna being called as a witness, her testimony about her relationship with BLH, or her testimony about BLH's relationship with his extended paternal family. Because there was no objection to Donna's testimony, to whatever extent the appellants now claim it was error for the court to consider, it is not preserved for our review. See, e.g. , Nazarenko v. CTI Trucking Co., Inc. , 313 Ark. 570, 584, 856 S.W.2d 869, 876 (1993) ("Few tenets are more firmly established than the rule requiring a contemporaneous objection in order to preserve a point for review."). Additionally, this court and our supreme court have affirmed trial courts that consider the relationship between the children and the extended family of the parent whose rights would be terminated by an adoption as part of a best-interest analysis. In re Adoption of J.P. , 2011 Ark. 535, at 19, 385 S.W.3d 266, 278 ; Hollis , 2015 Ark. App. 441, at 10, 468 S.W.3d 316.
The Ballards then go into a detailed discussion comparing Curtis with absent parents in Lagios v. Goldman , 2016 Ark. 59, 483 S.W.3d 810, cert. denied , --- U.S. ----, 137 S.Ct. 77, 196 L.Ed.2d 35 (2016), reh'g denied , --- U.S. ----, 137 S.Ct. 540, 196 L.Ed.2d 435 (2016) ;
*804 In re Adoption of A.M.C. , 368 Ark. 369, 246 S.W.3d 426 (2007) ; Matter of Adoption of Lybrand , 329 Ark. 163, 946 S.W.2d 946 (1997) ; T.R. v. L.H. , 2015 Ark. App. 483 ; and Sanders v. Savage , 2015 Ark. App. 461, 468 S.W.3d 795. They assert that the focus should have been on the relationship between the child and the natural parent instead of the relationship between the child and the person trying to adopt. They contend that Austin meets the very definition of a loving parent, whereas Curtis meets the very definition of a father who has not discharged his duties as a parent. Even still, we note one major distinction between the current case and those cited by the Ballards: in every single case cited by the Ballards, either this court or our supreme court affirmed adoption petitions granted by the trial courts.
Instead, this case is more like Hollis , supra . There, the lower court denied a stepparent adoption on a best-interest finding. The mother, while not incarcerated, had a history of drug and alcohol abuse and a DWI conviction, and one of her boyfriends had abused the minor child to be adopted. There was also evidence, however, that the mother had visited the minor child one time at school, was trying to better herself, and had photos of her and the minor child smiling together. There was also evidence that the minor child, as here, had a substantial relationship with his maternal grandmother, whom he loved and called "Nana." And, as here, the child had a wonderful parent-child relationship in place with the stepparent hoping to adopt. Despite these admittedly sparse findings, we affirmed. We did so because when the issue is one of terminating parental rights, there is a heavy burden on the party seeking to terminate the relationship, and we must give due regard to the trial court's personal observations and assessments of the credibility of the witnesses.
So, as in Hollis , the evidence before us supports the trial court's findings. Donna and Hailee testified that there was a significant bond between the child and Donna and his paternal extended family. Hailee testified that it would "crush" BLH if his paternal relatives were no longer in his life. Curtis testified that "Ms. Ballard and I separated when [BLH] was a year and a half old. If I legally remain his parent, as soon as I'm not incarcerated, I would be involved in everything in his life." Additionally, the court's statement that "the fact that each party was extremely young when this child was born, Mr. Howard is only 21, now, and that has to play a role in this decision," also supports the finding. The trial court's decision that the Ballards failed to meet their burden by clear and convincing evidence that adoption was in the best interest of BLH was not clearly erroneous.
Affirmed.
Abramson, Gladwin, Vaught, and Brown, JJ., agree.
Harrison, Klappenbach, Glover, and Hixson, JJ., dissent.
It is settled law that an adoption should be granted when it is in the best interest of the child involved. Ark. Code Ann. § 9-9-214(c) (Repl. 2015). It is not what is in the best interest of grandparents or relatives. In evaluating the best interest of a child, it is appropriate to consider stability in the life of the child. See Freshour v. West , 61 Ark. App. 60, 962 S.W.2d 840 (1998). In this case, B.H.'s stepfather, Jesse Ballard, is the only father figure known to the child. B.H.'s biological father, Curtis Howard, is currently in prison having been convicted of committing violent crimes and shall remain in prison until the child is nine years old, if not older. There *805 can be little doubt that granting Jesse's petition for adoption would have promoted stability in the child's life, and in my view the trial court clearly erred in failing to do so. The trial court's sole reason for denying the adoption was because of B.H.'s relationship with his paternal grandmother, Donna Posey, and his relatives on that side of the family. On the totality of this record, focusing on the best interest of the child , I would hold that this relationship was an insufficient reason to deny Jesse's petition. Based on my belief that the trial court clearly erred in finding that the adoption was not in B.H.'s best interest, I respectfully dissent from the majority opinion. I would reverse the trial court and remand for an order of adoption.
Although we give deference to the trial court to assess credibility and to weigh the evidence, in this case the material facts are largely undisputed, and the credibility of the witnesses was not a factor. Because B.H.'s father, Curtis, had failed to support B.H. for a period of more than a year, the trial court properly found that Curtis's consent to the adoption was not required. Curtis is a virtual stranger to B.H., having been committed to prison when B.H. was two years old and failing to perform the duties of a father before then. By his own testimony, Curtis will remain in prison until at least December 2021.
A review of the pre-prison relationship between Curtis and the child is demonstrative. Curtis, Hailee, and B.H. lived in and out of various family members' homes except for a two-month period when they had an apartment. During this period, Curtis never held a job and received Social Security benefits of $800 per month. Those benefits were forfeited when Curtis was incarcerated. Hailee testified that she had at least three jobs during this time period. It was uncontradicted that Curtis took drugs on a regular basis, and there was evidence that he did so even while caring for the infant when Hailee was at work. The straw that broke the camel's back was that Curtis's mother called Hailee looking for Curtis because Curtis was on drugs and stole some items from her home.
Details about the aggravated assault and robbery that resulted in his imprisonment are not in the record; however, it appears that Curtis has changed little while in prison. Curtis testified that while incarcerated, he has incurred several infractions including insolence to staff members, three refusals to obey orders, refusal of assignments, and two unexcused absences. Also, Curtis continued to fail to support or communicate with B.H. It is with this extensive background that Donna Posey, his mother, testified that it was her hope that when Curtis gets out of prison Curtis can step up to the plate and step into B.H.'s life and be a good person.
The undisputed evidence further demonstrates that for the past several years, B.H.'s stepfather, Jesse, has maintained a close father-and-son type of relationship with B.H. Jesse has assumed a parenting role and has helped Hailee raise B.H., doing such things as changing his diapers, feeding him, teaching him to ride a bicycle, and taking him fishing. Jesse is, for all intents and purposes, the only father the child knows.
The trial court denied Jesse's adoption petition because of B.H.'s significant relationship with his paternal grandmother, Donna, and B.H.'s relatives on that side of the family. We have held that a child's relationship with his grandparents on the side of the family resisting the adoption is a proper consideration in deciding whether adoption is in the child's best interest. See Hollis v. Hollis , 2015 Ark. App. 441, 468 S.W.3d 316. In Hollis , we affirmed the denial of a stepparent adoption on a best-interest determination, based in part on *806 the negative effect of the loss of contact with the grandparents on the other side of the family. However, I submit that the facts in Hollis are readily distinguishable from the facts of this case.
In Hollis , the mother resisting the stepmother's adoption petition was trying to better herself as a person and had maintained contact with the child. She was working two jobs and had tried to send some child support until the stepmother refused visitation. The mother in Hollis visited the child at school, and photographs of the mother and child showed the child to be happy. The trial court found that the mother's failure to provide care and support for the child was in part due to her financial problems, which the court found she was curing. The evidence showed that the mother had made significant strides to improve her life and her relationships, including her relationship with the child. In Hollis , the child also had a good relationship with the maternal grandmother. But when the trial court in Hollis found that the proponents of the adoption had failed to prove best interest, it appears that the trial court relied primarily on the mother's rehabilitative efforts and conduct toward the child and considered the child's relationship with his grandmother as supplemental supporting evidence. The mother's efforts in Hollis were a significant factor in the trial court's decision, and in my view the child's relationship with the maternal grandmother, standing alone, would have been an insufficient reason to deny the adoption.
In contrast to Hollis , the father in the present case is a nonfactor-in fact, a negative factor. He is incarcerated for committing violent crimes and had limited, and in fact, harmful, involvement with the child before that. B.H. does not know Curtis to be his father, and at the very earliest Curtis will be released from prison when the child is nine years old, at which time the child's already strong relationship with his stepfather will likely be even more established. The paternal grandmother, Donna, has no court-ordered visitation rights, and she agreed with Hailee that B.H. would not be told during visitation with her that Curtis is his father. Nevertheless, Hailee has fostered the relationship between B.H. and Donna by allowing Donna frequent visitation with the child. Although she has no legal obligation to allow this visitation to continue, Hailee made it clear in her testimony that whether or not the adoption was granted, she had no interest in severing this tie.
In my view, the relationship that Curtis's side of the family has with B.H. was not a sufficient basis upon which to deny the adoption when compared with the evidence clearly demonstrating that the adoption is in B.H.'s best interest and would promote stability in his life. In my de novo review of this case, I would hold that the trial court clearly erred in finding that the adoption was not in B.H.'s best interest, and I would reverse and remand for an order granting Jesse's adoption petition.
Harrison, Klappenbach, and Glover, JJ., join in this dissent.