Cite as 2021 Ark. App. 63

# ARKANSAS COURT OF APPEALS
DIVISION III
**No.** CV-20-279

| | |
|---|---|
| IN THE MATTER OF THE ADOPTION OF LZ, A MINOR | **Opinion Delivered:** February 10, 2021 |
| STEVEN AND CHRISTINA ZIMMERMAN<br>APPELLANTS | APPEAL FROM THE WHITE COUNTY CIRCUIT COURT [NO. 73PR-19-216] |
| V. | HONORABLE THOMAS HUGHES, JUDGE |
| AUSTIN HENRY<br>APPELLEE | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Steven and Christina Zimmerman appeal a White County Circuit Court order denying their petition for stepparent adoption asserting that the circuit court's determination that adoption was not in the best interest of the child was in error. Because the trial court's decision was not clearly against the preponderance of the evidence, we affirm.

In adoption proceedings, we review the record de novo, but we will not reverse the lower court's decision unless it is clearly erroneous or against a preponderance of the evidence, after giving due regard to its superior opportunity to determine the credibility of the witnesses. *Ducharme v. Gregory*, 2014 Ark. App. 268, at 6, 435 S.W.3d 14, 18. In cases involving minor children, a heavy burden is cast upon the court to utilize to the fullest extent all its power of perception in evaluating the witnesses, their testimony, and the children's best interest; that the appellate court has no such opportunity; and that we know

of no case in which the superior position, ability, and opportunity of the trial court to observe the parties carry as great a weight as one involving minor children. *Id.*, 435 S.W.3d at 18. When the issue is one of terminating parental rights, the appellate courts have referred to the "heavy burden" upon the party seeking to terminate the relationship. *Id.*, 435 S.W.3d at 18. Adoption proceedings are in derogation of the natural rights of parents, and statutes permitting such are to be construed in a light favoring continuation of the rights of natural parents. *Id.*, 435 S.W.3d at 18. With these standards in mind, we conduct the following de novo review of the record below.

Austin Henry and Christina Zimmerman are the biological parents of LW.[1] They were living together but were not married when Christina became pregnant. In May 2015, Austin moved to Kentucky. At the time of this relocation, Austin was aware of Christina's pregnancy.

LW was born on August 21, 2015, in Searcy, Arkansas. Austin was not at the hospital when LW was born, as Christina did not inform him of LW's birth. Brandy Ann Hammontree, Austin's mother, was aware of LW's birth, but Christina specifically requested that Hammontree not inform Austin of the event. Although Christina knew that Austin is the father, she did not list him as such on the birth certificate.

---

[1]LW was given Christina's maiden name at birth. The caption of the case reflects LW's proposed name change upon adoption. As the adoption petition was not granted, the child will be referred to by her legal name throughout this opinion.

Christina's relationship with Steven Zimmerman began in December 2016. They married in June 2018.[2] Steven has undisputedly assumed the father-figure role for LW.

Austin did not have any contact with LW from her birth until December 2018. While he did not have contact with LW during this period of time, his mother was establishing a relationship with LW, and he did take the necessary steps to have his name placed on the Putative Father Registry.

In December 2018, Austin and Christina agreed to a visitation plan in which Austin could visit with LW when it would not interfere with Steven's work schedule.[3] Since the implementation of the agreement, Austin traveled to Arkansas for visitation with LW on five occasions.

In July 2019, Steven and Christina filed a petition for stepparent adoption alleging that Austin's consent to the adoption was either not required or was excused because of a significant failure to communicate and/or provide for the care and support of LW for a period of one year and that adoption was in LW's best interest.[4] Austin contested the petition and filed a petition for the establishment of paternity in a separate proceeding. In November 2019, Austin was ordered to pay child support in the paternity action, which he began paying at that time.

---

[2]At the time of the hearing on the adoption petition, they had two children of their own.

[3]Steven worked in the oil fields and was gone frequently.

[4]The petition also alleged that the court could terminate Austin's parental rights by finding that if his consent was required, Austin was unreasonably withholding his consent contrary to the best interest of the child.

In December 2019, the parties appeared at a hearing on the petition for adoption wherein they presented conflicting evidence on many issues. Concerning Austin's relationship with LW, Christina and Steven claimed that Austin had done very little to establish any relationship with LW. Conversely, they contended that Steven had been the only real father figure in LW's life. In response, Austin admitted that Steven had been a father figure for LW, that he had no actual contact with LW until December 2018, and that he had seen four-year-old LW only five times since her birth. He claimed, however, that he attempted to have a relationship with LW but that Christina thwarted his efforts to do so, including threats to call the police if he attempted contact. In response to this claim, Christina admitted taking actions that made it difficult for Austin to establish a relationship with LW. She did not inform him of LW's birth, did not place his name on the birth certificate, and at times, blocked communication with him. In fact, she admitted that she willingly allowed Austin to see LW only twice, the other three times were without her permission. She claimed she did so because their last argument before he left for Kentucky had turned physical, and she was afraid he might be violent.

Concerning financial support, the parties again presented conflicting evidence. Austin testified that he had attempted to provide some financial support for LW but that Christina refused the offers. Despite these refusals, Austin claimed that he had given his mother money to buy things for LW and that he had set up a bank account for her to which he and his stepfather had contributed approximately $6,000. In addition, he presented evidence that as of the date of the hearing, he had made the required court-ordered child-support payments. In response, Christina asserted that Austin had not provided any financial

4

support.[5] She did ultimately admit that Austin had, at times, offered financial support, although such support was either ultimately not given or was refused.

After hearing all the evidence, the trial court entered a written order denying the petition, finding that denial of the petition was in LW's best interest. This appeal followed.

On appeal, Christina and Steven argue that the trial court erred in finding that adoption was not in LW's best interest.[6] They highlight the fact that Austin had had no contact with LW for the first three years of her life and that he provided absolutely no support for her during that time. They claim that this evidence of minimal contact and minimal support proves that he had abdicated his parental responsibilities and duties to Steven. They further assert that adoption would provide stability in her life, especially among her sibling group. Comparing the facts in this case with others in which adoption was determined to be in the best interest of the child, they assert the trial court clearly erred in its best-interest determination. We disagree.

In adoption proceedings, the party seeking to terminate parental rights has a heavy burden and must prove by clear and convincing evidence that adoption is in the child's best

---

[5]At the hearing, Christina claimed she had not received any of the court-ordered child-support payments; however, Austin submitted proof that the payments had been made to the White County Circuit Clerk's office.

[6]Austin argues that we should summarily affirm because the court was required to find that his consent had been either given or excused before the petition could be granted, and Christina and Steven failed to obtain a formal ruling on the issue of consent and also failed to challenge the issue of consent on appeal. However, if a trial court finds that an adoption is not in the best interest of a child, it is of no significance whether consent to adoption is required. *Hollis v. Hollis*, 2015 Ark. App. 441, at 8, 468 S.W.3d 316, 321. Thus, the court was not required to address both parts of the two-part adoption analysis. *See id.* And because we affirm on the best-interest analysis, there is no need to further address this issue.

interest. *See Kohler v. Croney*, 2020 Ark. App. 289, 602 S.W.3d 123. On appeal, we will not reverse a trial court's decision regarding the best interest of a child to be adopted unless it is clearly against the preponderance of the evidence, giving due regard to the opportunity and superior position of the trial court to judge the credibility of the witnesses. *Id*.

In light of our standard of review, the trial court's finding that adoption is not in LW's best interest is not clearly erroneous. In reaching this finding, the trial court clearly considered all the evidence before it made its best-interest determination.  The trial court considered that Steven has been a dutiful stepparent to LW and even commended him for fostering a loving relationship with LW. While Christina and Steven argued that Austin had not done enough, the trial court placed more weight on what Austin actually did.  The court noted the steps that Austin had taken. He attempted to formalize his rights as LW's father by taking the steps necessary to have his name placed on the putative-father registry and to later have paternity established.

With regard to the relationship between Austin and LW, the court noted the attempts that Austin made to visit LW. The court also noted Christina's attempts to limit or prevent that from occurring. It is undisputed that Christina did not contact Austin when LW was born, and there was testimony that she forbade Austin's mother from informing him of LW's birth if she wanted to see LW. Christina did not place Austin's name on the birth certificate, and Austin had to rely on internet and social media sleuthing to get any information on LW. Christina admitted that Austin had attempted to contact her on occasion and that, at times, she did not respond or blocked him from contacting her. In order to establish any visitation with LW, Austin had to agree to Christina's terms. He

agreed to slowly integrate visits to prevent confusion and distress and agreed to accommodate Steven's work schedule. Even though he lived in Kentucky, he returned to Arkansas on five separate occasions to see LW.

Finally, the court considered the evidence that Austin had a stable home and a well-paying job and that LW has a positive relationship with her paternal grandmother that would be severed if the adoption was granted. Given these facts, the court clearly recognized the potential for a positive father/child relationship and that termination of that relationship was not in LW's best interest at that time. The court's finding in that regard is not clearly against the preponderance of the evidence.

In summation, the trial court specifically addressed the high burden required to terminate the parental relationship concluding that Christina and Steven had failed to meet that burden. We have reviewed the record de novo and find that there is evidence to support the trial court's best-interest decision. Therefore, we affirm.

Affirmed.

GRUBER and VAUGHT, JJ., agree.

*James & Streit*, by: *Jonathan R. Streit*, for appellants.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellee.