Cite as 2019 Ark. App. 510

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV–19–81

| | |
|---|---|
| IN THE MATTER OF THE ADOPTION OF T.A.D., A MINOR CHILD | **Opinion Delivered:** November 6, 2019 |
| CODY JOHNSON<br>APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23PR-17-210] |
| V. | HONORABLE H.G. FOSTER, JUDGE |
| DEREK BEATTY<br>APPELLEE | REVERSED AND REMANDED FOR ENTRY OF AN ORDER GRANTING THE ADOPTION |

## RAYMOND R. ABRAMSON, Judge

Cody Johnson appeals the Faulkner County Circuit Court order denying his petition to adopt T.D., which was contested by the child's biological father, Derek Beatty. On appeal, Cody argues that the circuit court erred by finding that (1) Derek's consent to the adoption was required because his failure to communicate with, and to provide care and support for, T.D. was justifiable and (2) the adoption was not in the child's best interest. We reverse.

On May 1, 2017, Cody filed a petition to adopt T.D. He asserted that Derek's consent to the adoption was not required because for more than one year Derek had failed significantly and without justifiable cause to communicate with T.D and to provide for his

care and support. On June 23, Derek filed a response contesting the adoption. The court held a hearing on October 17.

Amber Dayberry, T.D.'s mother, testified that T.D. was born on October 7, 2006, and that Derek is his biological father. She stated that she and Derek never married but that they lived together from December 2006 through the spring of 2007. She explained that after she moved away from Derek in 2007, he did not see T.D. until July 2008 when the Saline County Circuit Court entered an agreed order for visitation. She testified that Derek exercised his visitation with T.D. for only a few months because Derek was incarcerated in 2009. She explained that after his release from prison in March 2011, the circuit court entered an order granting Derek supervised visitation, but the visits ended when Derek was incarcerated again. Specifically, in October 2011, the Saline County Circuit Court entered an order suspending Derek's visits due to his criminal charges.[1] Amber stated that Derek had not seen or had contact with T.D. since March or April 2011. She noted that T.D. was five years old at the time and that he is now eleven years old.

Amber further testified that the circuit court ordered Derek to pay child support in 2008 but that she had not received support since 2008 or 2009. She explained that he made only a few payments immediately after the entry of the child-support order. She stated that his arrears totaled thousands of dollars.

Amber acknowledged that Derek had called her multiple times from prison to discuss paying child support. She stated that she set up a post office box but did not receive any

---

[1]In the order, the court also transferred the case to Faulkner County where Amber and T.D. now reside.

2

support. She further acknowledged that he had contacted her to see T.D. while he was on furlough from prison, but she told him that they were busy.

As to her relationship with Cody, Amber testified that they had been dating since October 2014, had moved in together in December 2016, and had married in January 2017. She stated that T.D. refers to Cody as "dad" and that they have a father-son relationship.

Derek testified that he has misdemeanor convictions for criminal mischief, public intoxication, driving on a suspended license, and carrying a weapon and that he has been incarcerated in the Arkansas Department of Correction twice. Specifically, in 2009, he was convicted of prescription fraud and served nine months in prison. In 2011, he was convicted of aggravated robbery for theft of prescriptions drugs, and he is currently serving a ten-year sentence. He stated that he is eligible for parole in February 2018.

Derek testified that he does not believe the adoption is in T.D.'s best interest because he loves his son and has tried to maintain contact with him. He stated that when he went to prison in 2011, he wrote letters to Amber and sent her a birthday card for T.D. He also stated that he sent T.D. a letter in 2013 but that the letter was returned to him. Derek further testified that when he was on furlough in May 2015, he and Amber communicated on Facebook and by phone about T.D., but Amber stopped answering his calls around Father's Day of that year. He noted that he did not persist in communication with her because she caused "drama," and he did not want to risk losing his penitentiary privileges. He explained that he has furlough once a month and that he is released to his father's home from Friday through Sunday. He noted Amber had provided him the address of a post office box and that he had sent prison visitation forms, but she did not arrange visitation with T.D.

Derek stated that in prison, he has taken classes, such as a nine-month substance-abuse program, to improve himself. He testified that he is in a work-release program and that he works at Prospect Steel in Blytheville, Arkansas. He earns $850 a week. Derek stated that when he started the work-release program, he contacted the child-support office to make payments, but he was informed that his case had been "canceled." He stated that he last sent support for T.D. in 2009 or 2010. Derek testified that he was young and immature from 2006 through 2011 and that he has changed since he has been in prison.

Glennis Mae Dayberry, T.D.'s maternal grandmother, testified that she is active in T.D.'s life and that T.D. and Amber had lived with her for several years. She stated that T.D. sees Cody as his father and that they have a phenomenal relationship. She stated that Derek is a stranger to T.D and that he has not seen him since 2011. She is unaware of any letters or cards that Derek sent to T.D. She stated that T.D. would be harmed if Derek tried to establish a relationship with him due to Derek's criminal history.

Cody testified that he wants to adopt T.D., he has the resources to care for him, and he understands the legal ramifications of the adoption. He stated that "[i]t was magic when that boy came into my life three and a half years ago." He explained he and T.D. hunt, fish, and race cars and dirt bikes together.

Rocky Beatty testified that he is Derek's father and T.D.'s paternal grandfather. He noted that Amber, Derek, and T.D. lived with him when T.D. was an infant. He stated that he last saw T.D. five and a half years ago. He testified that he had tried to call Amber but that she never answered his calls and that he no longer has her contact information. He

4

further testified that Derek had tried to arrange visits with T.D. during his furlough, but he could not make contact with Amber.

At the conclusion of the hearing, the court asked the parties to file posttrial briefs. The court then made the following statement:

> It is a pretty high hill to get to take away someone's parental rights—or, rather, the child's rights. [T.D.] has a right to know his biological parents, and he has the right to a relationship if one can be had without hurting him or without hurting his best interest. So, on the one hand, [T.D.] has a fabulous family that he is living with now. . . . But at the same time, I am not seeing the indicators or markers that would make me think it is the right thing to take the possibility of a relationship with his biological dad off the table.

On September 28, 2018, the circuit court entered an order denying Cody's petition for adoption. The court found there was justifiable cause for Derek's lack of contact and support and that the adoption was not in T.D.'s best interest. This appeal followed.

We review adoption proceedings de novo on the record. *Newkirk v. Hankins*, 2016 Ark. App. 186, 486 S.W.3d 827. Adoption statutes are strictly construed, and a person wishing to adopt a child without the consent of the parent must prove, by clear and convincing evidence, that consent is unnecessary. *Id.* A circuit court's finding that consent is unnecessary due to a failure to support or communicate with the child will not be reversed unless clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In cases involving a minor child, the circuit court must utilize to the fullest extent all its power of perception in evaluating the witnesses, their testimony, and the child's best interest. *Id.* Because the appellate court has no such

opportunity, the superior position, ability, and opportunity of the circuit court to observe the parties are afforded their greatest weight in cases involving a minor child. *Id.*

On appeal, Cody first argues that the circuit court erred by finding that Derek's consent to adoption was required because Derek's failure to communicate and to provide care and support for T.D. was without justifiable cause.

Pursuant to Arkansas Code Annotated section 9-9-207(a)(2) (Repl. 2015), a parent's consent to adoption is not required of

> a parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree.

Justifiable cause means that the significant failure must be willful in the sense of being voluntary and intentional; it must appear that the parent acted arbitrarily and without just cause or adequate excuse. *Taylor v. Hill*, 10 Ark. App. 45, 661 S.W.2d 412 (1983). "Failed significantly" does not mean "failed totally." *Holloway v. Carter*, 2019 Ark. App. 330, at 7, 579 S.W.3d 188, 193. The one-year requirement applies to any one-year period between the date of the child's birth and the date the petition for adoption is filed and is not limited to the year immediately preceding the filing of the adoption petition. *Ray v. Sellers*, 82 Ark. App. 530, 120 S.W.3d 134 (2003).

While incarceration is not, of itself, conclusive on the termination issue, imprisonment does not toll a parent's responsibilities toward his child. *In re Adoption of A.M.C.*, 368 Ark. 369, 246 S.W.3d 426 (2007). A father's duty to support his minor child cannot be excused on the basis of the conduct of others, unless that conduct prevents him from performing his duty. *Pender v. McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979). In *Gordon*

*v. Draper*, 2013 Ark. App. 352, 428 S.W.3d 543, the circuit court found that the appellant's consent to adoption was unnecessary because of his failure to pay support for eighteen months despite being imprisoned for ten of those months. We affirmed, holding that the failure to pay support was unjustifiable. *Id*.

In this case, we agree with Cody that the circuit court erred by finding that Derek's failure to support T.D. for more than one year was justifiable. Here, Derek admitted that he did not provide any support for T.D. from 2010 to the filing of the adoption petition in 2017.[2] His excuse is that he had been incarcerated and had no ability to pay support. He also points out that the child-support office informed him that his case had been canceled, and he further claims that Amber thwarted his efforts to pay support.

We cannot hold that these are adequate excuses for Derek's total failure to support T.D. for seven years. Derek's imprisonment did not toll his responsibilities to support T.D. Most significantly, Derek participated in the work-release program beginning in 2015 and earned $850 per week. Yet he paid no support. He stated that he was saving his money for his release. Further, Derek cannot blame either the child-support office or Amber for his failure. Their conduct did not prevent him from paying support. He admitted at the hearing that Amber had provided him a post office box address, but he did not send any support for T.D. Given this evidence, we are left with a definite and firm conviction that a mistake was made when the circuit court found that Derek's failure to support T.D. for seven years was

---

[2]Derek testified that he last paid support in 2009 or 2010.

justifiable. Accordingly, we hold that the court erred by finding that Derek's consent to the adoption was required.[3]

Cody next argues that the circuit court erred by finding that the adoption was not in T.D.'s best interest. He asserts that the undisputed evidence shows that he and T.D. have a father-son relationship and that Derek had not had a relationship with T.D. since 2011. He argues that the court based its best-interest finding on speculation that Derek would embrace his parental duties in the future.

The law will favor a natural parent over all others if all things are equal. *Manuel v. McCorkle*, 24 Ark. App. 92, 749 S.W.2d 341 (1988). However, parental rights are not proprietary and are subject to the performance of duties and obligations of a parent to care for and support a child, and the law protects the rights of parents only so long as the parent discharges these duties. *Id.* The preference for natural parents should not be continued beyond the point where these duties and obligations have been ignored or shifted to others. *Id.*

In *McClelland v. Murray*, this court reversed the circuit court's best-interest finding in an adoption case when it concluded that because the children had thrived without adoption, there was no advantage in formalizing the petitioner's status as their father. 92 Ark. App. 301, 213 S.W.3d 33 (2005). Further, in *Apel v. Cummings*, this court reversed the circuit court's finding that adoption was not in the best interest of the children when the natural

---

[3]Because we hold that Derek's consent is not required on the basis of his failure to support T.D., we need not address Cody's arguments regarding Derek's failure to communicate. *See Cowsert v. Bargar*, 2014 Ark. App. 299, at 2 ("[O]nly one significant failure is required to render a parent's consent to adoption unnecessary.").

8

father had not seen his children from April 1998 through September 2000 and had only reluctantly paid court-ordered child support. 76 Ark. App. 93, 61 S.W.3d 214 (2001). We noted that the natural father had "essentially abandoned the children for more than three years, content to have appellant assume his parental duties." *Id.* at 98, 61 S.W.3d at 218.

Similarly, in this case, we hold that the circuit court erred by finding that it was in T.D.'s best interest to deny the adoption. Even though the law favors a natural parent above others, the undisputed evidence shows that Derek has had no relationship with T.D. since 2011. He did not pay child support from 2010 to the filing of the adoption petition in 2017. He last visited T.D. in 2011, and he sent T.D. only two letters in 2011 and 2013. He lost his preference as the natural parent when he ignored his parental duties and shifted them to Cody. Cody has assumed those duties and has fulfilled the role of T.D.'s father. Accordingly, the circuit court clearly erred in finding it was in T.D.'s best interest for the adoption to be denied. We therefore reverse.

Reversed and remanded for entry of an order granting the adoption.

VIRDEN and HIXSON, JJ., agree.

*Taylor & Taylor Law Firm, P.A.*, by: *Andrew M. Taylor*, *Tasha C. Taylor*, and *Tory H. Lewis*, for appellant.

*Cullen & Co., PLLC*, by: *Tim Cullen*, for appellee.