Cite as 2021 Ark. App. 440

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-20-677

| | |
|---|---|
| IN THE MATTER OF THE ADOPTION OF AP | **Opinion Delivered** November 10, 2021 |
| DILLON ARNOLD | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT |
| APPELLANT | [NO. 26PR-19-671] |
| V. | HONORABLE JOHN HOMER WRIGHT, JUDGE |
| NICKLAUS PRZYTARSKI AND COURTNEY PRZYTARSKI | |
| APPELLEES | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Dillon Arnold appeals from a Garland County Circuit Court's final decree granting an adoption petition filed by his ex-girlfriend's current spouse, Nicklaus Przytarski (Nicklaus). The circuit court granted Nicklaus's request to adopt appellant's minor child, AP (DOB 08-11-2010). On appeal, appellant argues that the circuit court erred in granting the adoption. Appellant more specifically argues that the circuit court erred by finding that his consent was not necessary and that the adoption was in AP's best interest. We affirm the order of adoption.

## I. *Relevant Facts*

Appellant and Courtney Basco (Przytarski), who were not married, had a child together in 2010—AP. In 2016, appellant filed a paternity action in Hot Spring County,

Arkansas. Appellant established paternity, and the circuit court granted him visitation with AP and ordered him to pay $40 a week in child support. In 2017, appellant's visitation was temporarily suspended pending his completion of a drug-rehabilitation program and the filing of a petition to reinstate his visitation rights.

In 2016, Nicklaus and Courtney were married. AP resided with Nicklaus and Courtney in Garland County. On November 22, 2019, Nicklaus filed in the Garland County Circuit Court a petition to adopt AP, and an amended petition was subsequently filed on December 9, 2019. In his amended petition, Nicklaus alleged that AP was living with Courtney and him; that AP was a resident of Garland County, Arkansas; and that Courtney consented to his adoption of AP. Nicklaus further alleged that although appellant, Dillon Arnold, had established paternity in 2016, appellant had "failed to see the minor child in excess of one (1) year and has failed to pay child support in excess of one (1) year." Nicklaus additionally alleged that appellant had abandoned AP pursuant to Arkansas law by failing to pay child support in excess of one year and that he should be permitted to adopt AP because he was "physically and financially able to furnish suitable support to nurture and educate the child." Thus, Nicklaus prayed for an order permitting him to adopt AP and that "upon the issuance of a Final Decree . . . that a substituted birth certificate be issued showing [him] to be the parent of said child along with the child's biological mother."

On January 21, 2020, appellant moved to transfer venue from Garland County to Hot Spring County, alleging that Hot Spring County had jurisdiction for all custody issues because the original paternity action in 2016 had been filed in Hot Spring County. In his motion, appellant also alleged that $2,540 in child support was paid on December 3, 2019.

2

Appellant further alleged that the paternal grandparents had also filed a petition on December 16, 2019, in Hot Spring County to establish grandparents' visitation rights. As such, appellant prayed that the court transfer the case to Hot Spring County and dismiss the petition for adoption.

Also on January 21, 2020, appellant filed his answer to the amended petition for adoption in the Garland County Circuit Court. Appellant generally denied that the allegations in the petition for adoption should be granted and stated that the adoption was not in AP's best interest because AP had "a significant and meaningful relationship with [his] family."

Nicklaus responded that Arkansas Code Annotated section 9-9-205 provides that, generally, venue for an adoption is the county where the petitioner and minor child reside. As such, he asserted that venue was proper in Garland County because Courtney and AP reside in Garland County and prayed that the motion to transfer venue be denied.

A hearing on the pending motion to transfer venue and the amended petition for adoption was held on May 29, 2020. After hearing oral argument on the merits of appellant's motion to transfer venue to Hot Spring County, the circuit court denied the motion and heard testimony on the petition for adoption.

Courtney (Basco) Przytarski testified that she married Nicklaus on October 16, 2016, and that AP has resided with them since then. She explained that the last time appellant saw AP was in October 2017. Courtney explained that a December 22, 2017, order issued by the Circuit Court of Hot Spring County temporarily suspended appellant's visitation with AP due to appellant's failing a drug test and continued drug use. A copy of the order

was admitted into evidence. The 2017 order further provided that appellant was to "seek drug rehabilitation and successfully complete it before petitioning the court to reinstate his visitation rights." Courtney testified that there was never a time in which she did not make her address or whereabouts known to both appellant and the paternal grandparents. Courtney also testified that appellant had failed to make child-support payments for a period in excess of twelve months. In addition to Courtney's testimony, an affidavit of child-support arrears prepared by the Office of Child Support Enforcement was admitted into evidence. The document reflected that appellant had been ordered to pay $40 weekly as of August 5, 2016. The logs showed that no payments had been made in 2018, and the only payment made in 2019 was after the petition for adoption had been filed. A lump-sum payment of $2,540 was made on December 4, 2019, toward the child-support arrears, leaving a balance due of $3,880 as of May 21, 2020.

Courtney explained that she believes the paternal grandparents are good people and that they sometimes have AP's best interests at heart. Courtney testified that there were some recent issues with the grandparents not following her COVID-19 precautions and instructions or returning AP to her as requested. She also testified that before the 2017 order, the grandparents would allow AP to be around appellant even though appellant "was on drugs." Courtney testified that she understood that if the adoption petition was granted, Mr. and Mrs. Arnold would no longer legally be considered AP's grandparents. She opined that she did not think an adoption would be detrimental to AP because AP did not want to go to the paternal grandparents' home as much, and she explained that she would continue to allow the paternal grandparents to see AP in the future even after an adoption was granted.

Courtney requested that the court grant the adoption and testified that Nicklaus has been a stable father for AP. She explained that Nicklaus had changed his employment so that he could provide for, and take care of, AP. Courtney also testified that if Nicklaus was granted the adoption, AP could be added to Nicklaus's insurance.

Nicklaus testified that he thinks of AP as his son and desires that AP have his last name. Nicklaus admitted that although his relationship with AP would be the same regardless of whether the adoption was granted, the adoption would prevent him from losing AP if anything were to happen to Courtney. Nicklaus explained that he is able to provide and care for AP. He admitted that the paternal grandparents have given them food from their garden in the past, but he explained that it was not because he was short of money.

Appellant testified that he was currently in a six-month drug-rehabilitation program as a result of being sentenced to the Arkansas Department of Correction for felony theft of property and violation of probation and that he would not be released until September 2020. Arnold admitted that he has had problems with using drugs in the past, but he stated that he had been sober before he was sentenced to prison. Appellant testified that he had purchased clothing, toys, candy, and a bicycle for AP during the preceding two and a half years and had given those items to his father. Appellant also explained that he and his father had bought a four-wheeler for AP to use when AP visits appellant's father.

Appellant stated that he was not legally allowed to visit AP during the two and a half years preceding the hearing because of the 2017 Hot Spring County order. Appellant admitted that he had not filed a request to reinstate visitation since the order was entered in

2017. Appellant also stated that he had no way to contact Courtney and stated that Courtney had made it clear to him that she would not talk with him. However, appellant admitted that during that time, he lived only two residences down from his father and would occasionally observe or run into AP when AP was visiting at his paternal grandparents' home. Appellant testified that the last time he was within arm's length of his son was January, February, or March 2019.

Appellant claimed he wants another chance to see his son and stated that he plans to petition to reestablish visitation after his release from the rehabilitation program. He admitted that he had been sober for almost a year before using methamphetamine in July 2019. He was later incarcerated and claimed that the last time he used methamphetamine was in July 2019. Appellant further acknowledged that although he worked "off and on," he did not provide any child support in 2018 or 2019. Despite this acknowledgment, appellant maintained that he could not pay child support because he had no employment. However, he admitted that he owned a house, truck, and other minor assets.

Tommy Arnold, appellant's father and AP's paternal grandfather, testified that Courtney had disappeared with AP to another state for almost a year. However, since 2017, Courtney would allow AP to spend every other weekend with him and his wife. Tommy explained that although Courtney had never threatened to withhold visitation, he had filed a petition for grandparent visitation in Hot Spring County Circuit Court after Nicklaus filed the petition for adoption. Tommy testified that he was concerned that he would not be able to continue seeing AP if the adoption was granted. AP was named as a beneficiary of Tommy's life insurance policy. Tommy admitted that appellant has been able to observe

AP while at his home, but he stated that appellant had not been able to have any physical visitation with AP. Tommy stated that he had allowed AP to talk with appellant two weeks before the hearing and also mentioned that there was one letter sent. Finally, Tommy admitted that the December 2019 child-support payment was not paid by appellant but was instead paid by Tommy's aunt in Maryland.

After the hearing, the circuit court filed a decree of adoption on August 13, 2020, making the following pertinent findings:

> 6. That the biological mother, COURTNEY PRZYTARSKI, having entered a consent to adoption and the time period to withdraw the consent having passed.
>
> 7. That due to the Petitioner being married to the biological mother of the minor child, the Petitioner is not required to have further home study.
>
> 8. That the minor child came into the care and custody of the Petitioner when the Petitioner married the biological mother, COURTNEY PRZYTARSKI.
>
> 9. That the biological father of the minor child, DILLON ARNOLD, has abandoned the minor child as defined under the Arkansas Code and this Court finds that the father failed to pay child support for the minor child for a period in excess of twelve (12) months.
>
> 10. The biological father has further failed to exercise substantial visitation in excess of (12) twelve months with the minor child.
>
> 11. The Court further finds that the lack of child support payment for the minor child and the lack of intent to exercise his role as a father waives the biological father's right to object pursuant to Arkansas Code.
>
> 12. That the minor child has no property and the Petitioner is morally suitable to have custody of said child and is physically and financially able to furnish suitable support, nurture and education to the child.
>
> 13. That the Petitioner appears healthy and vibrant and able to care for the minor child.

14. The Respondent, DILLON ARNOLD, acknowledged in open Court that the minor child was healthy and well cared for by the Petitioner and biological mother.

15. That the Respondent, DILLON ARNOLD, in open Court acknowledged his methamphetamine use within the past year.

16. That the minor child deserves a stable and dependable parental relationship with his father.

17. That the parental rights of DILLON ARNOLD are terminated as to [AP] . . . .

18. That the facts set forth in the said Petition are true and it is in the best interest of said child that the adoption may be made.

19. That the Arkansas Department of Vital Statistics is hereby Ordered to make the changes to the minor child's birth certificate to be in compliance with this Order.

IT IS THEREFORE CONSIDERED, ORDERED AND DECREED that [AP] be and hereby is adopted by the Petitioner, NICKLAUS PRZYTARSKI, and that from this day forward the said child shall be the child of the Petitioner and biological mother; that upon entry of this Decree a substituted birth certificate be issued and showing the Petitioner to be the father and mother of said minor child[.]

This appeal followed.

## II. *Consent*

We review adoption proceedings de novo, and a circuit court's decision will not be set aside unless clearly erroneous. *In re Adoption of A.M.P.*, 2021 Ark. 125, 623 S.W.3d 571; *Thompson v. Brunck*, 2018 Ark. App. 198, 545 S.W.3d 830. A finding is clearly erroneous when, despite evidence to support it, we are left with the firm conviction that a mistake has been made. *In re Adoption of A.M.P.*, *supra.* We defer to the circuit court's superior vantage point on matters of witness credibility, and personal observations of the

court are given great weight in cases involving the welfare of young children. *Id.*; *Rodgers v. Rodgers*, 2017 Ark. 182, 519 S.W.3d 324.

Generally, consent to an adoption is required by the father of the minor child to be adopted. Ark. Code Ann. § 9-9-206(a)(2) (Repl. 2020). Under certain circumstances, however, the consent of the father may not be required. As relevant here, Arkansas Code Annotated section 9-9-207(a) provides that consent to adoption is not required of

> (1) a parent who has . . . abandoned a child;

> (2) a parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree[.]

Adoption statutes are strictly construed, and a person who wishes to adopt a child without the consent of the parent must prove by clear and convincing evidence that consent is not required. *In re Adoption of A.M.P.*, *supra*.

Here, the petition for adoption alleged that consent of the father was not required under Arkansas Code Annotated section 9-9-207(a)(1) because the father had abandoned the child; and alternatively, that consent was not required under 9-9-207(a)(2) because the father had failed significantly without justifiable cause to provide support for the child in excess of twelve months.[1] Because the circuit court's order failed to specifically mention under which subsection of the statute it was finding that consent was not required, it is unclear to us whether the circuit court was finding that consent was not required pursuant

---

[1]Nicklaus's petition did not contain citations to either subdivision(a)(1) or (a)(2). Rather, his petition alleged that appellant had "abandoned" AP, which is a term contained in subdivision (a)(1), and that appellant "has failed to pay child support," which is an element found in both subdivisions (a)(1) and (a)(2).

9

to Arkansas Code Annotated section 9-9-207(a)(1), or (a)(2), or both. Under our de novo review of the record, we hold that the record supports the circuit court's finding that consent was not required under either subdivision (a)(1) or (a)(2) of the statute; therefore, we must affirm.

We first hold that appellant's consent was not required because "for a period of at least one (1) year[, appellant] has failed significantly without justifiable cause . . . to provide for the care and support of the child as required by law or judicial decree[.]" Ark. Code Ann. § 9-9-207(a)(2). It is undisputed that appellant failed to pay any child support in 2018 or in 2019 until after the initial petition for adoption was filed. It is important to note that the one-year period required under the statute may be any one-year period, not merely the one-year period preceding the filing of the petition for adoption. *Holloway v. Carter*, 2019 Ark. App. 330, 579 S.W.3d 188. Appellant nevertheless argues that he did not fail to support AP for more than a year because he gave his father, Tommy, sporadic gifts of clothing and other items to be used when AP visited Tommy's home. However, we have explained that it is not required that a parent fail totally in these obligations in order to fail significantly within the meaning of the statutes. *Holloway*, *supra*. It only means that the failure must be significant, as contrasted with an insignificant failure. *Childress v. Braden*, 2017 Ark. App. 569, 532 S.W.3d 130. It denotes a failure that is meaningful or important. *Id*. In *Childress*, we affirmed a circuit court's finding that Childress's consent was not required because she had failed significantly and without justifiable cause to support her child for at least one year when she made only a few sporadic gifts of clothing and other items and did not make any court–ordered child–support payments for more than a year. Similarly, here, we cannot say

10

that the circuit court's findings were clearly erroneous where appellant failed to make any court-ordered child-support payments for a period of more than a year and instead made only sporadic gifts.

Appellant also argues that his failure to pay any child support was justified because he "could not pay monetary support without income" and that Courtney put up "a stone wall barrier" that limited more. "Justifiable cause" means that the significant failure must be willful in the sense of being voluntary and intentional; it must appear that the parent acted arbitrarily and without just cause or adequate excuse. *In re Adoption of P.H.*, 2020 Ark. App. 178, 598 S.W.3d 846. Here, appellant's arguments lack merit. Appellant testified that he worked "off and on" and admitted that he owns a house, a truck, and other minor assets. Further, appellant was ordered by the circuit court to pay child support, and his payments were not dependent on Courtney's communication with him. Contrary to appellant's allegations otherwise, Courtney testified that there was never a time in which she did not make her address or whereabouts known to both appellant and the paternal grandparents. Further, it is of note that AP visited appellant's father's residence, which is located only two houses down from where appellant resided. We defer to the circuit court's superior vantage point on matters of witness credibility and therefore agree that appellant's failure to provide support was not justified under these circumstances. *In re Adoption of A.M.P.*, *supra*.

We are also cognizant that after the briefs had been filed in this appeal, our supreme court rendered its opinion in *In re Adoption of A.M.P.*, *supra*. In *A.M.P.*, the supreme court recited that section 9-9-207(a)(2)(ii) requires a showing that the parent failed to provide for the "care *and* support" of the child. 2021 Ark. 125, at 9, 623 S.W.3d at 577 (emphasis

11

added). It further explained that although the care component of the statutory language is often overlooked, the statute requires a failure to provide both. *Id.* Here, although appellant does not contest the "care" component in his brief, the evidence presented below as to this issue was also sufficient. As already stated, appellant provided AP only sporadic gifts, which were given to appellant's father for use at his father's home, and he just observed AP from afar with perhaps a few chance encounters due to appellant's proximity to his father's home. On the record before us, we hold that appellant has also failed significantly without justifiable cause to provide for the care of AP as required by law or judicial decree. Because we hold that appellant's consent was not required because of his failure to provide care and support under section 9-9-207(a)(2)(ii), we need not discuss appellant's arguments concerning his failure to communicate under section 9-9-207(a)(2)(i). *See Childress*, *supra*.

Moreover, we also hold that appellant's consent was not required because appellant had abandoned AP under Arkansas Code Annotated section 9-9-207(a)(1). Arkansas Code Annotated section 9-9-202(7) defines "abandonment" as

> the failure of the parent to provide reasonable support and to maintain regular contact with the child through statement or contact, when the failure is accompanied by an intention on the part of the parent to permit the condition to continue for an indefinite period in the future, and failure to support or maintain regular contact with the child without just cause for a period of one (1) year shall constitute a rebuttable presumption of abandonment[.]

Under this definition, we note there is an intent element required that is not contained in section 9-9-207(a)(2). That said, the statute creates a rebuttable presumption of abandonment when a parent fails to support or maintain regular contact with his or her child without just cause for a period of one year. Thus, our supreme court has acknowledged and explained that the "abandonment" definition overlaps a bit with the

12

language in section 9-9-207(a)(2). *In re Adoption of Lybrand*, 329 Ark. 163, 946 S.W.2d 946 (1997); *see also In re Adoption of A.M.C.*, 368 Ark. 369, 246 S.W.3d 426 (2007). It has said that under both provisions, the question is whether the periods of noncommunication or nonsupport resulted "without just cause" or were "justifiable." *In re Adoption of A.M.C.*, 368 Ark. at 377, 246 S.W.3d at 431–32.

Here, as already set out in our discussion of section 9-9-207(a)(2), the evidence sufficiently supports the circuit court's finding of abandonment. Appellant failed to pay any court-ordered child support for over a year. He made no payments in 2018, and his aunt made a lump-sum payment on his behalf in December 2019 only after the petition for adoption had been filed. Further, even with that lump-sum payment, appellant was still $3,880 in arrears and provided no evidence that he intended to make any further child-support payments. Moreover, appellant testified that he had worked, owned a home, and had other minor assets. Yet, other than sporadic gifts given to his father, appellant failed to support AP for over a year. Under these facts, we cannot say that the circuit court's finding that appellant's actions satisfied the definition of abandonment was clearly erroneous. Accordingly, we affirm the circuit court's finding that appellant's consent to the adoption was not required.

### III. *Best Interest*

The mere fact that a parent has forfeited the right to have his consent to an adoption required does not mean that the adoption must be granted; the court must further find by clear and convincing evidence that the adoption is in the best interest of the child. *Kohler v. Croney*, 2020 Ark. App. 289, 602 S.W.3d 123. We will not reverse a circuit court's

decision regarding the best interest of a child to be adopted unless it is clearly against the preponderance of the evidence, giving due regard to the opportunity and superior position of the circuit court to judge the credibility of the witnesses. *Id.* In cases involving minor children, a heavier burden is cast upon the circuit court to utilize fully all its power of perception in evaluating the witnesses, their testimony, and the children's best interest. *In re Adoption of LZ*, 2021 Ark. App. 63, 616 S.W.3d 695. An appellate court has no such opportunity, and we know of no case in which the superior position, ability, and opportunity of the circuit court to observe the parties carries as great a weight as one involving minor children. *Id.*

Appellant argues on appeal that the adoption is not in AP's best interest. He more specifically argues that he "sought his father-son relationship and wanted to see [AP] as often as possible." More so, appellant argues that the order granting adoption should be reversed because an adoption would terminate the long-term relationship AP had with his paternal grandparents. We find appellant's arguments unpersuasive and hold that the circuit court did not err in finding that it was in AP's best interest to grant Nicklaus's adoption petition.

Under this point, appellant first argues that the adoption is not in the best interest of AP because he "sought his father-son relationship and wanted to see [AP] as often as possible." The law will favor a natural parent over all others if all things are equal. *In re Adoption of T.A.D.*, 2019 Ark. App. 510, 588 S.W.3d 858. However, parental rights are not proprietary and are subject to the performance of duties and obligations of a parent to care for and support a child, and the law protects the rights of parents only so long as the parent discharges these duties. *Id.* The preference for natural parents should not be

14

continued beyond the point where these duties and obligations have been ignored or shifted to others. *Id*.

In *Apel v. Cummings*, this court reversed the circuit court's finding that adoption was not in the best interest of the children when the natural father had not seen his children from April 1998 through September 2000 and had only reluctantly paid court-ordered child support. 76 Ark. App. 93, 61 S.W.3d 214 (2001). We noted that the natural father had "essentially abandoned the children for more than three years, content to have appellant assume his parental duties." *Id*. at 98, 61 S.W.3d at 218. Further, in *In re Adoption of T.A.D.*, *supra*, we held that the circuit court erred by finding that it was in T.D.'s best interest to deny the adoption. We explained that even though the law favors a natural parent above others, the undisputed evidence showed that the biological father had not had a relationship with T.D. since 2011; did not pay child support from 2010 to the filing of the adoption petition in 2017; last visited T.D. in 2011; and sent T.D. only two letters—one in 2011 and one in 2013. *Id*. Therefore, we held that the father lost his preference as the natural parent when he ignored his parental duties and shifted them to another. *Id*. The stepfather had assumed those duties and had fulfilled the role of T.D.'s father. *Id*.

Appellant's second argument under this point is that an adoption would not be in the best interest of AP because it would terminate the long-term relationship AP had with his paternal grandparents. The circuit court must weigh the benefits flowing to children from the granting of an adoption as opposed to weighing the disadvantages that may result from the severing of ties between grandparents and grandchildren. *In re Adoption of B.A.B.*, 40 Ark. App. 86, 842 S.W.2d 68 (1992). In *B.A.B.*, the paternal grandmother, who had

been granted court-order visitation with B.A.B., intervened after the new husband of B.A.B.'s mother petitioned to adopt B.A.B. without the consent of B.A.B.'s father. The paternal grandmother argued that the circuit court erred in finding that the adoption was in B.A.B.'s best interest because she had little hope of maintaining contact with B.A.B. if the adoption were granted. *Id*. We affirmed the adoption, holding that we were satisfied that the circuit court carefully considered these competing interests in making its decision, and we could not say that its decision was clearly against the preponderance evidence. *Id*.

Similarly, in *Newkirk v. Hankins*, Newkirk argued that it was not in the best interest for his child to be adopted by his child's guardians. 2016 Ark. App. 186, 486 S.W.3d 827. He specifically argued that the circuit court should have denied the adoption petition so that he and his family's relationship, specifically the paternal grandmother, could continue with the child. *Id*. We held that Newkirk was essentially asking this court to do what the circuit court rightfully would not do—place his and his relatives' desire for a relationship with the child over the child's need for a stable and permanent home. *Id*. Therefore, we affirmed the adoption after giving due deference to the superior position of the circuit court to make that determination and concluding that the circuit court's finding that adoption was in the child's best interest was not clearly erroneous. *Id*. The supreme court has stated that "[i]t was unquestionably within the province of the legislature to decide that the reasons favoring the solidarity of the adoptive family outweigh those favoring grandparents and other blood kin who are related to the child through the deceased parent." *Wilson v. Wallace*, 274 Ark. 48, 50, 622 S.W.2d 164, 166 (1981).

In this case, appellant seemed content with ignoring his parental duties and shifting them to Nicklaus. Appellant essentially had no relationship with his son, absent watching his son interact with other individuals from afar or hugging his son on one occasion in violation of the circuit court's order. Appellant never petitioned to reinstate visitation, despite his testimony that he had been sober for more than a year, and he failed to pay child support. Nicklaus had assumed appellant's duties and fulfilled the role of AP's father. Additionally, as in *Childress*, *In re Adoption of B.A.B.*, and *Newkirk*, appellant alleges that the adoption would be detrimental to the relationship AP has with his paternal grandparents. However, just as we noted in *Childress*, Courtney testified that she wants to maintain AP's relationship with his paternal grandparents. Further, the circuit court specifically found that AP "deserve[ed] a stable and dependable parental relationship." Thus, taken as a whole, and giving deference to the circuit court to assess the credibility of the witnesses, we cannot say that the circuit court's determination of best interest was clearly erroneous. Accordingly, we affirm the circuit court's order granting the adoption petition.

Affirmed.

WHITEAKER and BROWN, JJ., agree.

*Jonathan Huber* and *Robert S. Tschiemer*, for appellant.

*Tapp Law Firm, P.A.*, by: *Tylar C.M. Tapp III*, for appellees.