Cite as 2024 Ark. App. 486

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-23-471

| | | |
|---|---|---|
| SETH OTWELL | | Opinion Delivered October 9, 2024 |
| | APPELLANT | APPEAL FROM THE COLUMBIA COUNTY CIRCUIT COURT [NO. 14PR-21-161] |
| V. | | |
| LIZETT OTWELL | | HONORABLE DAVID W. TALLEY, JR., JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

The Columbia County Circuit Court granted the petition of Lizett Otwell to adopt the three minor children of her stepson, Seth Otwell.  On appeal, Seth argues that the circuit court abused its discretion in admitting a home study, erred in finding that his consent to the adoption was waived, and erred in finding that the adoption was in the children's best interest.  We affirm the circuit court's order.

Seth and Kayla Howerton are the parents of three children born in 2011, 2012, and 2017.[1]  In 2016, the older two children were removed from Kayla's custody by the Arkansas Department of Human Services (DHS) due to her drug use.  A dependency-neglect case was

---

[1]Like Seth, Kayla opposed the adoption petition below, but the circuit court found that her consent was waived.  She is not a party to this appeal, and the evidence regarding her is not relevant.

open until custody was returned to Kayla in the fall of 2017. Seth had two periods of incarceration relevant to this case. The first period involved the charge of second-degree battery on a law enforcement officer, and Seth was incarcerated from October 8, 2016, until August 13, 2018.[2] Less than eight months after his release, Seth was incarcerated again on April 7, 2019, for possession of methamphetamine, and he was not released until August 26, 2020.

During the dependency-neglect case and Seth's incarcerations, the children lived for much of the time at the home of Carmen Borne, Seth's maternal grandmother. Lizett testified that she became involved when Seth was in prison because there were issues with Kayla living at Carmen's house. Lizett said that drugs had been found at the home, that the police had been called, and that Kayla had altercations with Seth's mother, Terri Johnson. Lizett said that she started taking the children for weekends to give Carmen and Terri a break. Lizett and Seth's father, Tim Otwell, petitioned to be named guardians of the children in October 2019 after an incident in which Terri called Lizett because Kayla was attempting to take one of the children from the house while under the influence of drugs. A temporary guardianship was granted in October 2019 with Seth's consent, and on January

---

[2]For the first time in his reply brief, Seth disputes that he was incarcerated for twenty-two consecutive months, stating, without citation to the record, that he was present for the birth of his child in 2017. However, the circuit court's order clearly set out its findings regarding the dates of Seth's incarceration, and Seth did not dispute the dates in his opening brief; instead, he admitted that "[h]e was then incarcerated from October 8, 2016 until August 2018." It is well established that we will not consider an argument made for the first time in a reply brief. *Sanders v. Passmore*, 2016 Ark. App. 370, 499 S.W.3d 237.

2

6, 2020, Tim and Lizett were named the children's permanent guardians. Despite the guardianship, the children did not move in with Tim and Lizett for several months. Lizett testified that she did not want to "rip the kids" from Carmen's home and that Carmen would get upset every time they intended to move them. Although the children were not fully moved until July 2020, they had been spending time at Lizett and Tim's home four or five times a week. Lizett put the children in counseling to help with the transition.

After Seth's release from prison in August 2020, he lived with Carmen. Seth began spending time with the children at Tim and Lizett's home and had the children stay with him at Carmen's home about every other weekend. In March 2021, however, Tim and Lizett began significantly limiting Seth's contact with the children. According to Seth, a "falling out" occurred with Tim after Seth chose to play golf on a couple of occasions instead of helping work at the family store. Lizett testified that they began restricting Seth's visitation due to a threatening phone call he made and concerns that he was drinking alcohol around the children.

In August 2021, Seth filed a motion to terminate the guardianship or, in the alternative, for visitation. Tim and Lizett filed a petition to adopt the children in December 2021. Tim passed away in April 2022, and Lizett filed an amended adoption petition in June 2022. The adoption hearing was held over two days in August and October 2022. The record was reopened on two occasions before the court entered a final order granting the adoption. The court found that Seth's consent to the adoption was not required due to his

3

failure to communicate with the children or to provide for their care and support. The court further found that the adoption was in the children's best interest.

We review adoption proceedings de novo on the record. *In re Adoption of T.A.D.*, 2019 Ark. App. 510, 588 S.W.3d 858. Adoption statutes are strictly construed, and a person wishing to adopt a child without the consent of the parent must prove, by clear and convincing evidence, that consent is unnecessary. *Id.* The court must further find by clear and convincing evidence that the adoption is in the best interest of the child. *In re Adoption of AP*, 2021 Ark. App. 440, 638 S.W.3d 293. We will not reverse a circuit court's decision unless it is clearly against the preponderance of the evidence, giving due regard to the opportunity and superior position of the circuit court to judge the credibility of the witnesses. *Id.* In cases involving minor children, a heavier burden is cast upon the circuit court to utilize fully all its power of perception in evaluating the witnesses, their testimony, and the children's best interest. *Id.* An appellate court has no such opportunity, and we know of no case in which the superior position, ability, and opportunity of the circuit court to observe the parties carries as great a weight as one involving minor children. *Id.*

## I. *Home Study*

After the adoption hearings were held but before issuing a ruling, the circuit court entered an order reopening the record for the purpose of obtaining a home study on Lizett's home. The court noted that although the issue was not raised at the hearings or in the posthearing briefs, Arkansas Code Annotated section 9-9-212 (Supp. 2023) requires a home

4

study unless an exception is met. After the home study was performed and filed, the circuit court entered the final order.

Seth argues that the circuit court abused its discretion in admitting the home study after the hearing because Arkansas Code Annotated section 9-9-212(b)(4)(B) provides that a home study "shall be filed with the court before the petition is heard." He further argues that it was an abuse of discretion to admit the home study into evidence without affording him the opportunity to cross-examine the preparer. These arguments were required to be raised to the circuit court to preserve them for appellate review. *See Wilson v. Golen*, 2013 Ark. App. 267, 427 S.W.3d 723. Seth did not object to the court's reopening the record or admitting the home study, and he did not request an opportunity to cross-examine its preparer. Because the arguments were not raised below, we do not reach the merits of these arguments.[3]

## II. *Consent*

Pursuant to Arkansas Code Annotated section 9-9-207(a)(2) (Repl. 2020), consent to adoption is not required of

> a parent of a child in the custody of another, if the parent for a period of at least one
> (1) year has failed significantly without justifiable cause (i) to communicate with the

---

[3]In his reply brief, Seth argues that because he was denied the right of cross-examination, we should reach his arguments pursuant to the fourth *Wicks* exception to the contemporaneous-objection rule—when the admission or exclusion of evidence affects a defendant's substantial rights. *See Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). However, our case law is quite clear that *Wicks* presents only narrow exceptions that are to be rarely applied, and these exceptions are not intended to apply where a party simply fails to make a contemporaneous objection. *See Witherspoon v. State*, 2020 Ark. App. 468 (refusing to apply the *Wicks* exceptions to an alleged Confrontation Clause error).

child or (ii) to provide for the care and support of the child as required by law or judicial decree.

Justifiable cause means that the significant failure must be willful in the sense of being voluntary and intentional; it must appear that the parent acted arbitrarily and without just cause or adequate excuse. *T.A.D.*, *supra*. "Failed significantly" does not mean "failed totally." *Id.* The one-year requirement applies to any one-year period between the date of the child's birth and the date the petition for adoption is filed and is not limited to the year immediately preceding the filing of the adoption petition. *Id.*

Seth challenges the circuit court's findings regarding both communication and care and support. We address the care-and-support ground. The court found that Seth had failed significantly without justifiable cause to provide for the children's care and support as required by law for three periods of time in excess of a year: for his first period of incarceration from October 8, 2016, through August 13, 2018; for his second period of incarceration from April 7, 2019, through August 26, 2020; and from August 26, 2020, until December 28, 2021.

Seth argues that the court put undue emphasis on his incarcerations and failed to account for the "care" component of the statute. He argues that he regularly provided care for the children from his release in August 2020 until March 2021, and Tim and Lizett thwarted his attempts to continue such care. Seth argues that his lack of financial support was justified because neither his divorce decree nor the guardianship orders required him to

6

pay support, and Lizett never sought support and made clear that she was financially capable of taking care of the children without assistance.

We cannot say that the circuit court clearly erred in finding that Seth failed without justifiable cause to provide for the care and support of the children as required by law during his periods of incarceration. While incarceration is not, of itself, conclusive on the termination issue, imprisonment does not toll a parent's responsibilities toward his child. *T.A.D.*, *supra*. A father's duty to support his minor child cannot be excused on the basis of the conduct of others, unless that conduct prevents him from performing his duty. *Id.* In *Sharp v. Pike*, 2015 Ark. App. 670, 476 S.W.3d 217, the appellant, like Seth, argued that she had never been ordered to pay child support and noted her disputed testimony that she had offered to pay support, but the other party refused it. We held that the facts were undisputed that for more than a one-year period, the appellant failed to provide any care or support for the child. Although no order had been entered requiring the appellant to pay child support, a parent cannot turn a child's care and support over to another and thereby be excused from the duty of providing support, a duty that exists whether ordered by a court or not. *Id.* (citing *In re Adoption of Glover*, 288 Ark. 59, 702 S.W.2d 12 (1986)).

Unlike the cases cited by Seth, the orders addressing custody in this case did not address child support and, in any event, were not entered until after his first period of incarceration. Seth argues that Lizett's petition did not allege any failures in care or support for any period before October 2019, but he does not cite any authority that would limit the court's consideration of the evidence of nonpayment that was presented. Lizett's assertion

7

in a May 2020 letter that Seth had always maintained employment and provided for his children "up until his incarceration" has no bearing on the court's findings regarding the lack of care and support during the incarcerations. Finally, Seth's argument that COVID prevented any opportunity to work in prison after March 2020 cannot excuse his failure to provide support for more than two and a half years before then. As the circuit court found, Seth's incarceration was due to his own actions and cannot be blamed on anyone other than himself.

III. *Best Interest*

The circuit court found that when the adoption petition was filed, the children had been out of Seth's custody for significant portions of their lives—nearly 50 percent for the older two children and over 50 percent for the youngest. The court found that Seth had not acted in the children's best interest when he, among other things, committed the felony offenses of battery on a law enforcement officer and possession of a controlled substance resulting in two incarcerations; used illegal substances when he had custody of the children; engaged in domestic violence against the children's mother; failed to contribute to the children's support; tested positive for THC; and violated the court's order regarding a nailbed drug test. The court found that Lizett had provided a home for the children for more than two years, which provided safety and stability that their parents had not provided. The court found that it was in the children's best interest that they be adopted by Lizett because she had demonstrated care and the ability to provide for their safety, security, and future.

Seth argues that Tim and Lizett prevented the children from having contact with him and other family members "when the only 'issue' they ever had with Seth's visits was that he would return them 5 minutes to a half hour late and would request to spend more time with his children." Seth points to a letter Lizett wrote in May 2020 in support of his release from prison in which she states that he is a good father, and the children miss him and ask about him. He notes that since his release in August 2020, he had gone to school, become gainfully employed, gotten married, passed drug screens, and maintained a home and transportation. He argues that Lizett had only one example of alleged volatile behavior—a March 2021 phone call—and argues that there were no allegations of anger or hostile behavior toward the children.

Seth's initial argument mischaracterizes Lizett's testimony. Lizett testified that after Seth's release in 2020, the children would spend weekends with him at Carmen's home. Lizett said that "at that time it wasn't like we felt like there was an issue with Seth or them going over to their grandmother's house. The only issue we had is when we would tell them to bring them home at a certain time. They never had them home on time." Eventually, however, Lizett said that she and Tim began noticing that Seth had not completely "changed his ways."

Lizett described the incident in March 2021 in which Seth called Tim at about 1:00 a.m. and yelled at his father to come outside and bring his gun "because he's going to need it." Two of the children were at home, and Tim told Lizett to call the police because they assumed Seth was outside. Because of the way Seth was yelling on the phone, they thought

Seth had been drinking, and this was not the first time they had thought that. The police came but did not find Seth on the property, and Tim declined to press charges. Lizett stated that she was concerned about this decision because she had known Seth to have been violent on several occasions in the past. She described one incident a few years before in which she alleged that Seth grabbed Tim's daughter's neck and tried to choke her, and when Tim tried to protect his daughter, Seth hit Tim. Other evidence of violence was presented through Kayla's testimony that she had filed for an order of protection against Seth in 2019 alleging he had kicked her leg and had sex with her while she was unconscious. This testimony was apparently the basis of the court's finding that Seth had failed to act in the best interest of his children when he committed domestic violence against their mother.

Although Lizett acknowledged the ways in which Seth had improved his life since his release from prison, she testified that he had not changed his attitude and "ways" because he still exhibited anger and volatile behavior. She said that this was evidenced by Seth's threats and by comments made on Facebook toward her. She said that Seth had posted her phone number and asked people to call her so he could get the children back. Lizett testified that she had a fear of Seth based on his previous behavior. She also believed that visits with the parents made the oldest child angrier and resulted in his backtalking and punching his siblings.

Lizett was also concerned that Seth would return to drug use, noting that he had not taken a court-ordered drug test. In December 2021, the court ordered Seth to submit to a nailbed drug test and to not alter his nails before the test. Seth appeared for the test, but

the employee who attempted to perform the test testified that he had freshly cut nails that were too short to test. Seth testified that he keeps his nails short because he's a diesel mechanic, and he had not gone back to have the test done because he was not able to afford it. The court found that Seth deliberately violated the court's order by cutting his nails so samples could not be taken. Seth submitted to a hair-follicle test in August 2022, which was positive for carboxy-THC.[4] Although Seth had not tested positive when drug tested by his parole officer, in September 2022, his urine sample was a bluish-green color, which was a color his parole officer testified she had never seen before and indicated potential adulteration of the sample.[5]

Although Seth had made improvements in his life, Lizett had been providing consistent care and support for the children for three years, and the children had lived in her home for more than two years. Parental rights are not proprietary ones and are subject to the performance of duties and obligations of a parent to care for and support a child, and the law protects the rights of parents only so long as the parent discharges these duties. *Newkirk v. Hankins*, 2016 Ark. App. 186, 486 S.W.3d 827. We will not place a parent and his relatives' want of a relationship with a child over the child's need for a stable and permanent home. *See id.* Giving due deference to the circuit court's superior position to

---

[4]Seth attributed this to a vape, which he mistakenly thought was CBD and only tried one time.

[5]Seth tested negative the following day.

observe the witnesses and evaluate the children's best interest, we cannot conclude that the circuit court's finding was clearly erroneous.

Affirmed.

ABRAMSON and BROWN, JJ., agree.

*Appellate Solutions, PLLC*, by: *Deborah Truby Riordan*; and *Landgon*Davis, L.L.P.*, by: *Brent M. Langdon*, for appellant.

*Robertson, Oswalt & Nony*, by: *Chris Oswalt*, for appellee.