Cite as 2026 Ark. App. 133

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CV-25-223

| | | |
|---|---|---|
| FRED PLANT | | Opinion Delivered February 25, 2026 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTEENTH DIVISION [NO. 60PR-24-378] |
| V. | | |
| TASHONDA PLANT | | |
| | APPELLEE | HONORABLE AMY DUNN JOHNSON, JUDGE |
| | | AFFIRMED |

**WENDY SCHOLTENS WOOD, Judge**

Fred Plant appeals a Pulaski County Circuit Court order denying his petition to adopt Minor Child (MC). For his sole point on appeal, Fred argues that the circuit court erred in denying his petition for adoption because it was not in MC's best interest. We affirm.

Tashonda and Fred Plant married on August 22, 2011. MC was born on November 19, 2013. The parties divorced on April 24, 2019. The divorce decree awarded custody of MC to Fred and standard visitation to Tashonda.

On February 22, 2024, Fred filed a single-parent petition to adopt MC, which, if granted, would terminate Tashonda's parental rights. He asserted that MC had been in his exclusive care and custody and that Tashonda had had no contact with MC since November 2022. Fred alleged that Tashonda's consent was not required pursuant to Arkansas Code

Annotated section 9-9-207(a) (Repl. 2020) because she significantly and without justifiable cause failed to provide financial support to MC or communicate with MC since November 2022. Fred asserted that it was in MC's best interest to be adopted. Specifically, Fred alleged that he wanted to adopt MC and had the means to support him; Tashonda was a "habitual illegal drug user who associates with known drug dealers and uses methamphetamine, cocaine, and fentanyl"; Tashonda failed to establish a meaningful relationship with MC and failed to provide support; and MC wished to be adopted by Fred.

A hearing occurred on December 5. MC, who was eleven years old and in the fifth grade, testified that he had always lived with his father, who provides him with everything he needs and is a good dad. MC testified that he had not seen Tashonda in two or three years and has no relationship with her. He said Tashonda is "a terrible mother" and had not "been a mother" to him since he was three. His sister, Shawnee Jones, had also told him that Tashonda was "a terrible mother." MC recounted an occasion when he was around six years old that his mother "drugged" him when they were in a hotel room so that he would go to sleep and she could "party" with her friends. He said he did not like his mom, did not want her in his life, did not have any good memories of her, and did not think he would ever want a relationship with her. He believed it was in his best interest to not have a relationship with his mom going forward.

Shawnee, Tashonda's biological daughter and MC's half sister,[1] testified that she had not seen her mother in four years. Shawnee said they had a "falling out" due to an issue with fraudulent checks and because Tashonda had taken Shawnee's child to a home "well-known for drug use." Shawnee no longer allows her daughter to be around Tashonda and would not allow MC to be around her if she was responsible for him. Shawnee said that her mom went to prison when Shawnee was a child and went to a rehab program after being released but relapsed. Shawnee thought that it was in MC's best interest for Tashonda's "parental rights to be terminated" because she did not believe Tashonda could stay clean. However, Shawnee conceded that she did not know whether Tashonda had made any progress in the past four years.

Fred testified that MC has lived with him his entire life and has lived alone with him since he was three. He said Tashonda left him and MC to do drugs. He said that after they divorced, she exercised her visitation but was always late and exposed MC to felons. Fred stopped allowing visitation on the advice of an attorney but did not file for a change of visitation. Fred testified that he is an electrical contractor, is financially stable, and can support MC. When asked why he filed the petition, Fred said, "[T]hat lady is evil. She has broken every rule of life." He elaborated that he was concerned that if he died, "she's going to take over everything I've worked [for] and built for [MC]. She's going to ruin his life. I cannot live and have that. I've got to have him safe." Fred said that granting the petition and

---

[1]Tashonda has another biological son, Trevor, who is MC's half brother.

terminating Tashonda's rights would be in MC's best interest because it was the only way he could protect MC.

Tashonda testified that she is living in Little Rock and works full time at a grocery store. She said she is on parole until 2032. She acknowledged that she had been to prison before MC was born and had spent six months in prison since he was born. She has not seen MC in over a year—she would meet Fred and MC in Russellville for dinner, explaining that was all the time she was "allowed." Tashonda admitted that she had provided no support in the past year but said that Fred had not provided her with any bills to pay. Tashonda had been meeting Fred and MC every couple of months until Fred's attorney told him not to allow visits with her. When Tashonda was paroled in 2024, she voluntarily went to and completed a rehab program at Phoenix House; she attends a twelve-step drug-and-alcohol program and has a sponsor.

Tashonda said that she has not used drugs in almost two years and will never use drugs again. She hoped to have a relationship with MC again and was willing to do anything to regain MC's and Fred's trust. She said she loves MC and has no desire to take MC away from Fred or to make MC feel uncomfortable. She has a home with space for MC and hopes she will be able to spend time with him. Tashonda testified that she has a strong support system, including the three witnesses who testified on her behalf at trial, all of whom she has known for many years and who are in her life on a day-to-day basis. Tashonda admitted that her life had once been "a mess" but said that things are very different now.

Linda Godwin testified that she has known Tashonda for at least thirty years. She said that Tashonda is a wonderful person and is no longer using drugs. Godwin thought Tashonda can "do better" this time.

Tena Hauk testified that she has a bachelor's degree in psychology and criminology and met Tashonda in 2006 when Hauk was a counselor and teacher for a prison program. Hauk helped Tashonda get situated after her release from prison and still maintains contact. She meets with Tashonda three to four times a month, and they talk every week. Hauk said that Tashonda is not using drugs and has had no desire to use since she became clean over a year ago. Hauk believes Tashonda is doing well and should, at some point, have a relationship with MC.

Nancy Kline met Tashonda about eighteen years ago when Kline did prison ministry. Kline said that they now go to the same church, and Tashonda regularly attends the recovery class she leads every Wednesday. Kline said that Tashonda was a "leader and faithful" in prison and always participates in the recovery class. Kline stated that they did not have contact for a few years, but they reconnected about a year ago. Kline says that Tashonda talks about MC all the time, loves him, and wants a relationship with him.

In a January 8, 2025 order, the circuit court denied Fred's petition. Although the circuit court found that Fred established by clear and convincing evidence that Tashonda's consent was not required because she failed significantly, without justifiable cause, to provide support for MC for a period of at least one year, the circuit court found that Fred failed to

5

show by clear and convincing evidence that adoption was in MC's best interest. Specifically, the circuit court found:

> Because this is a single-parent adoption, a decision to grant the Petition would effectively operate to terminate Tashonda's parental rights and sever the legal and familial ties not only between [MC] and his mother, but with his siblings, Shawnee and Trevor. It was evident to the Court that Shawnee and [MC] enjoy a positive, supportive relationship, and the Court does not believe that termination of that relationship would be in [MC]'s best interest. In addition, while Fred's testimony conveyed an understandable desire to protect [MC] and his future, it is the Court's opinion that the termination of the relationships between [MC] and his mother and siblings, along with Fred's age, present a reasonable likelihood that [MC] may be left without a parent or siblings while he is still a minor. Finally, while the Court has no doubt that Tashonda's conduct has caused significant damage to her relationship with [MC], the Court also finds that Tashonda has worked to try to change her behavior and her life for the better. Virtually all of the testimony regarding why the adoption would be in [MC]'s best interest was focused on Tashonda's past conduct rather than how the adoption will be in [MC]'s best interest going forward. As such, the Court does not believe that Fred has met the requisite burden of proof that the adoption is in [MC]'s best interest. The Petition for Adoption is therefore denied without prejudice.

This appeal followed.

Arkansas Code Annotated section 9-9-204(3) (Repl. 2020) permits an unmarried parent to adopt his or her biological child. Before an adoption petition can be granted, the circuit court must find from clear and convincing evidence that the adoption is in the best interest of the child. *Newkirk v. Hankins*, 2016 Ark. App. 186, at 14, 486 S.W.3d 827, 835.

This court will not reverse a circuit court's decision regarding the best interest of a child to be adopted unless it is clearly against the preponderance of the evidence, giving due regard to the opportunity and superior position of the circuit court to judge the credibility of the witnesses. *In re Adoption of E.R.*, 2020 Ark. App. 418, at 3. We give great weight to a

circuit court's personal observations when the welfare of young children is involved. *Id.* The burden rests on the one seeking adoption to prove by clear and convincing evidence that adoption is in the child's best interest. *Id.* The ultimate determination of best interest is the primary objective of the circuit court in custody matters. *Id.*

Fred makes several arguments in support of his position that the circuit court erred in denying his petition. First, he asserts that the circuit court wrongly recalled the evidence when it found that MC's "testimony about Tashonda seemed to be based wholly on statements that other family members have made to him over the years rather than recollections or opinions that he had formed as an eleven-year-old, especially considering the testimony of Shawnee Jones and Fred Plant." We disagree. This finding followed the circuit court's detailed recitation of MC's testimony that included his personal experiences with Tashonda. The finding that Fred complains of is not an incorrect recollection of the testimony but simply an assessment of credibility and weight to be afforded to the testimony.

Next, Fred argues that the circuit court clearly erred in finding that adoption was not in MC's best interest because there is overwhelming evidence that supports the adoption and a lack of evidence opposing it. Fred contends that the circuit court focused on its desire to maintain MC's relationship with his half siblings and disregarded the adverse relationship between MC and Tashonda; relied on Tashonda's recent efforts to rehabilitate herself despite a lifetime of drug use; failed to properly consider that Tashonda was content to allow Fred to assume all parental responsibilities; and failed to recognize evidence that Tashonda

did not take "action in the [circuit] court for visitation."[2] This, too, is a request for us to reweigh the evidence, which we cannot do.

Here, the court recognized that, according to MC's birth certificate, Fred was born on August 22, 1948, and was seventy-six years old at the time of the hearing, and Tashonda was born on November 8, 1972, and "considerably younger." Fred testified that he pursued the adoption action because he was worried about what might happen to MC if he died. The circuit court, in finding that granting the adoption was not in MC's best interest, considered the termination of relationships with his mother and half siblings along with Fred's age, specifically stating that MC could be left without a parent in his minority. The circuit court also recognized MC's relationship with Shawnee, finding that they have a positive, supportive relationship with one another and noting that Shawnee's "care and concern for [MC] were apparent in her testimony[.]" Contrary to the assertion that the circuit court disregarded the relationship between MC and Tashonda, the circuit court specifically recognized that Tashonda's past conduct had caused "significant damage" to the relationship but acknowledged that Tashonda was working to change her behavior and life for the better and desired to have a relationship with her son. We give great weight to a circuit court's personal

---

[2]We note that Fred likens his case to *In re Adoption of AP*, 2021 Ark. App. 440, at 18, 638 S.W.3d 293, 303–04, where this court affirmed the adoption of AP by his stepfather over the objection of the biological father, resulting in the termination of his paternal grandparent relationships. Unlike *AP*, this is a single-parent adoption rather than a situation in which a stepparent is seeking to assume the parental responsibility.

observations when the welfare of young children is involved. *McBride v. McBride*, 2026 Ark. App. 58, at 5, ___ S.W.3d ___, ___.

In sum, Fred's arguments are requests for this court to reweigh the evidence in his favor. We will not reweigh the evidence or second-guess the circuit court's credibility determinations. *Id.*; *In re Adoption of E.R.*, 2020 Ark. App. 418, at 3. On this record, we hold that the circuit court did not clearly err in finding that Fred failed to establish that allowing him to adopt MC—and legally sever all relationships with MC's maternal family—was in MC's best interest.

Affirmed.

GLADWIN and MURPHY, JJ., agree.

*Hale & Young, P.L.L.C.*, by: *Virgin W. Young*; and *Tschiemer Legal Briefing*, by: *Robert S. Tschiemer*, for appellant.

*Center for Arkansas Legal Services*, by: *Catherine Demailly* and *Drew Rogers*, for appellee.